## *In re* E. B. JEWETT, *Petitioner.*
### No. 14,049. (77 Pac. 567.)
#### SYLLABUS BY THE COURT.

1. HABEAS CORPUS—*Jurisdiction in Contempt Matters— Statute Construed.* The third clause of section 671 of the code of civil procedure (Gen. Stat. 1901, § 5167), which relates to procedure in *habeas corpus,* and which forbids the discharge, upon such proceedings, of one held for contempt, does not apply to the case of one so held where the order under which he is being held was made without jurisdiction. In such case the jurisdiction of the court to make such order may be inquired into.

2. —— *Presentation of Question of Jurisdiction to the Committing Judge Not a Condition Precedent.* One held as for contempt under an order made without jurisdiction need not first raise the question of the jurisdiction of the court or judge making the order before such court or judge, but may do so in an independent proceeding in *habeas corpus.*

3. JURISDICTION—*Regulated by Constitution and Law.* The jurisdiction of the several courts of this state, and of the judges thereof, is regulated by the constitution and laws of the state.

4. —— *Jurisdiction of District Courts and Judges Confined to their Districts.* The jurisdiction of the several district courts of this state, and of the judges thereof, in civil matters is confined to their respective districts.

5. HABEAS CORPUS—*Civil Remedy—Limited to Districts of Judges.* The remedy sought in a proceeding in *habeas corpus* is a civil one, and, hence, judges of district courts have no power to direct the issuance of the writ to a person outside of their districts, commanding him to bring into their districts the body of one detained outside thereof.

*In re* Jewett.

Original proceeding in *habeas corpus*.   Opinion filed
July 7, 1904.   Petitioner discharged.

### STATEMENT.

BY this original proceeding in *habeas corpus*, the pe-
titioner, E. B. Jewett, seeks to obtain his discharge
from an alleged illegal detention.   The facts out of
which this detention arose are as follows :

William Howard was convicted of a felony in the
district court of Johnson county, it being one of the
counties of the tenth judicial district, and sentenced
to confinement in the state penitentiary, at Lansing,
in Leavenworth county, which is not in the tenth ju-
dicial district.   Conceiving that his detention was
illegal, Howard brought his proceeding in *habeas cor-
pus* in the district court of Johnson county, Kansas,
against Jewett, the petitioner here, who is warden of
the state penitentiary, and as such was holding How-
ard under the judgment resulting from the above
conviction.   Upon his petition, which showed the
above facts, the writ was issued by the Honorable W.
H. Sheldon, the judge of the district court of Johnson
county, sitting at chambers, to said Jewett, as warden,
directing him to bring Howard before the said judge,
at Olathe, the county-seat of Johnson county.   This
writ was served upon Jewett by the sheriff of Johnson
county, at the state penitentiary, in Leavenworth
county.   On the return-day the county attorney made
special appearance on behalf of Jewett, and moved to
quash the writ on jurisdictional grounds, which motion
was denied.   Jewett failing to produce Howard in
pursuance of the command of the writ or to make
further return, he was, after proper citation, arrested
in Shawnee county, which is not in the tenth judicial
district, for contempt of the court's order in the pro-

ceeding in *habeas corpus*. This is the detention of which complaint is made.

As the petition in the first proceeding in *habeas corpus* stated the place of, and the reason for, Howard's detention, it thereby showed that the writ was issuing to one outside of the judicial district of the judge issuing it. The claim of the petitioner here is that proceedings in *habeas corpus* are civil in their nature; that the jurisdiction of a judge of the district court in civil matters does not extend beyond the limits of his district; that this writ, going, as it did, beyond these limits, was not within the jurisdiction of the judge, and imposed no obligation upon Jewett to respond to it; and, hence, that he was not in contempt for failure to obey it. The claim is made that, even though the judge had jurisdiction to issue the writ, its service outside of the district conferred no jurisdiction of the person of the petitioner, and, further that, in any event, no jurisdiction was conferred, because the service was made by the sheriff of Johnson county outside of his county.

*C. C. Coleman*, attorney-general, and *Jay F. Close*, assistant attorney-general, for petitioner.

*C. B. Little*, and *C. L. Randall*, for respondent.

The opinion of the court was delivered by

CUNNINGHAM, J.: At the outset of the discussion we are met by respondent's contention that we cannot inquire into the merits of the petitioner's case, and this for two reasons. Under the article of our code relating to *habeas corpus*, section 671 (Gen. Stat. 1901, § 5167), is found this language:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commit-

ment has not expired, in either of the cases following :
.  .  .   Third, for any contempt of any court, officer
or body having authority to commit.  .  .  .   Fourth,
upon a warrant or commitment issued from the dis-
trict court, or any other court of competent jurisdic-
tion, upon an indictment or information.''

It is claimed that inasmuch as the petitioner is in
custody under the order of Judge Sheldon for his con-
tempt in refusing to obey the command to produce
the body of William Howard, an inquiry into the
legality of such detention is forbidden by the third
subdivision above quoted.   In order that any court or
other tribunal may make an order of commitment—
that is, a valid order of commitment—there must be
jurisdiction so to do in the court, officer or body mak-
ing such order.   Not only jurisdiction generally to
make such orders must rest in such court, officer, or
body, but also jurisdiction over the person and in the
matter to which the order of commitment is sought to
apply.   It would hardly be contended that, even
though a district judge has general authority, on
proper occasion, to commit for contempt, such an
order made by a judge while he was out of his district
would be of binding force, and that, were it sought to
enforce such order, any competent court might not
intervene.   So that, at the bottom of this question, as
well as fundamentally in the others presently to be
discussed, is the inquiry into Judge Sheldon's juris-
diction in the entire premises ; and, if we conclude
that he had no jurisdiction in the matter of the issu-
ance of the writ of *habeas corpus* on the petition of
Howard, then its disobedience was not contemptuous,
and would form no proper foundation for the commit-
ment of this petitioner because of its disobedience.

The second objection to our inquiry into the merits

has for its reason the matter found in the fourth sub-division above quoted, and for its support the argument that the petitioner should yield himself to the adjudication of Judge Sheldon, and that upon such consideration, it being presumed that, if there were no jurisdiction to arrest for contempt, Judge Sheldon would so decide and discharge the petitioner, and that, if he should not do so, it would then be time enough to invoke the interference of another court; in other words, that it was the duty of the petitioner to present his cause to the court from which the order for his arrest issued. In support of this contention the case of *In re Gray*, 64 Kan. 850, 68 Pac. 658, is cited. That was a case where the petitioner, being in legal custody, sought to raise the question of the constitutionality of a law, the violation of which was charged by a proceeding in *habeas corpus*. This court there held that he could not do this; that he must present his entire case to the court which had jurisdiction of his person and of the matter which he sought there to present. Clearly, a very different question would be presented in a case where the petitioner was restrained by an order made entirely without jurisdiction. It would be little short of a farce to require a petitioner to yield himself to a court having no jurisdiction of his person in order that that court might determine whether it had jurisdiction. In speaking upon this identical question, this court, in the case of *In re Dill*, 32 Kan. 668, 688, 5 Pac. 47, 49 Am. Rep. 505, after an exhaustive review of authorities, used the following language :

"Under the authorities before cited, and on principle, we think that § 671 of the statute does not prohibit one court, by and under proceedings in *habeas corpus*, from examining the judgment or commitment for contempt of another court under which a person

is restrained of his liberty ; and if on such examination it appears, and the record shows, that the court rendering the judgment was without jurisdiction to render it under some circumstances, or if the charge on which the petitioner is convicted and imprisoned does not constitute an offense for which punishment can be inflicted, or that the court has rendered a judgment which it had no authority to render, or has exceeded its authority, from discharging the petitioner from imprisonment.''

The same view was taken in the case of *In re Smith,· Petitioner*, 52 Kan. 13, 33 Pac. 957, where the court in the syllabus said :

''The supreme court may, upon proceedings of *habeas corpus*, examine the judgment or order of a district court committing a party for contempt; and if,· upon such examination, it appear that the district court was without authority to commit, under the particular circumstances of the case, the petitioner· may be discharged.''

Hence, this objection, as well as the first, must find its solvent in the determination of whether the judge had authority to direct the issuance of the first writ on Howard's petition.

We are, therefore, come to the discussion of the fundamental question, whether Judge Sheldon had jurisdiction to make the original order in Howard's proceeding in *habeas corpus*, for, if this order was without jurisdiction and void, then its disobedience by Jewett was no contempt, as he would not be bound to obey an order which the judge had no authority to make. Upon this proposition it is said at page 178· of volume 15 of the American and English Encyclopedia of Law :

''But if the court did not have jurisdiction of either· the party or the subject-matter, or if,· having jurisdiction in both respects, it exceeded its powers in·

making any order or determination the disobedience of which was the contempt charged, or in making a commitment, *habeas corpus* is the proper mode of obtaining relief, as in case of other void judgments.''

Many other authorities might be cited in support of this proposition, of which the following are a few: Church, *Hab. Corp.* 154; *Ex parte Arnold*, 128 Mo. 256, 30 S. W. 768, 1036, 33 L. R. A. 386, 49 Am. St. Rep. 557; *Ex parte Clark*, 126 Cal. 235, 58 Pac. 546, 46 L. R. A. 835, 77 Am. St. Rep. 176; *State v. District Court*, 21 Mont. 155, 53 Pac. 272, 69 Am. St. Rep. 645; 9 Cyc. 9, where many authorities are cited.

It must be borne in mind that Howard's petition showed upon its face the nature and place of confinement, and that he was being detained by Jewett as warden of the state penitentiary, at the penitentiary, in Leavenworth county, which was outside of the territorial limits of the tenth judicial district. If, under these facts, Judge Sheldon had no authority to require the production of Howard's body within his district, then the order to do so was void. What, then, is the jurisdiction bestowed upon judges of the district court by our constitution and statutes? Section 6 of article 3 of the constitution provides: ''The district courts shall have such jurisdiction in their respective districts as may be provided by law.'' Section 16 of the same article provides: ''The several justices and judges of the courts of record in this state shall have such jurisdiction at chambers as may be provided by law.'' Section 1924 of the General Statutes of 1901 gives certain civil jurisdiction to judges of the district court and provides that the same shall be exercised ''within their respective districts.'' By the code of criminal procedure, warrants for the arrest of offenders and processes for the procurement of the attendance

of witnesses may issue to any county within the state, and by section 270 of that code (Gen. Stat. 1901, § 5708) provision is made for the issuance of writs of *habeas corpus* to inquire into the detention of persons held under sentence of punishment of death. Speaking generally, then, we may say that, as to civil matters, the jurisdiction of the district court, or the judge thereof at chambers, is confined to the limits of his district; while, as to criminal matters, such as are pointed out in the statute, process may go to any portion of the state.

This brings us to the question whether a proceeding in *habeas corpus* is in its nature civil or criminal. If the former, then Judge Sheldon's order to Jewett to produce the body of Howard before him, both being outside of the tenth judicial district, was without jurisdiction and void. Under the provisions of article 1 of the code of civil procedure (Gen. Stat. 1901, §§ 4429–4440) the remedies to be had in a court of justice are divided into actions and civil proceedings. An action is defined as follows :

"An ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Actions are classified into civil and criminal, the latter being thus defined :

"A criminal action is one prosecuted by the state as a party against a person charged with a public offense, for the punishment thereof."

It is plain that by no possible construction of these definitions can it be held that a proceeding in *habeas corpus* is criminal in its character; the state is not a party thereto; the person against whom it is directed

·is not charged with a public offense (unless it might ·so happen in some cases as an incident) ; and in no ·case is it the object of the proceedings to punish for ;any offense. On the other hand, the object of the writ ·of *habeas corpus*, as defined in section 660 of the civil ·code (Gen. Stat. 1901, § 5156), is to inquire into the ·cause of the restraint of the petitioner, and to deliver ,therefrom, if found illegal.

In the case of *Ex parte Tom Tong*, 108 U. S. 556, 559, ·2 Sup. Ct. 872, 27 L. Ed. 826, Chief Justice Waite, in :speaking of the proposition, said :

"The writ of *habeas corpus* is the remedy which the ·law gives for the enforcement of the civil right of per- ·sonal liberty. Resort to it sometimes becomes neces- ·sary, because of what is done to enforce laws for the .punishment of crimes, but the judicial proceeding un- ·der it is not to inquire into the criminal act which is ·complained of, but into the right to liberty notwith- standing the act. Proceedings to enforce civil rights are civil proceedings, and proceedings for the punish- ment of crimes are criminal proceedings. In the pres- ent case the petitioner is held under criminal process. The prosecution against him is a criminal prosecution, but the writ of *habeas corpus* which he has obtained is not a proceeding in that prosecution. On the con- trary, it is a new suit brought by him to enforce a ·civil right, which he claims, as against those who are holding him in custody, under the criminal process."

, In the recent case of *The State, ex rel. Durner, v. Huegin*, 110 Wis. 189, 62 L. R. A. 700, 85 N. W. 1046, it was said : ·

"Regardless of what a *habeas corpus* proceeding should be called under the code, which divides all judicial proceedings into actions and special proceed- ings, it is to all intents and purposes a civil suit—a proceeding in the nature of a civil action—in which the party seeking to establish his right to personal liberty is plaintiff . . . and the person charged

with the wrong is an adverse party, to all intents and purposes a defendant, regardless of the name by which such a person is commonly known in such a proceeding.''

The question under consideration was discussed at length in this case, many authorities being cited. (See, also, Church, *Hab. Corp.* §§ 70, 174 ; Hurd, *Hab. Corp.* 129.)   Indeed, this court, in *Gleason v. Comm'rs of McPherson Co.*, 30 Kan. 53, 54, 1 Pac. 384, 2 Pac. 644, in explicit language, though merely incidental to the case, held that ''*habeas corpus* is not a criminal action within the definition'' given in the code.

By the provisions of section 672 of the code of civil procedure (Gen. Stat. 1901, § 5168), the civil remedy of *habeas corpus* is made to perform the function of an appeal from an order of a committing magistrate in cases when bail has been denied upon a preliminary hearing, for the purpose of having the questions therein involved reconsidered.   To this extent its use may fairly be considered criminal in its nature (*In re Snyder, Petitioner, etc.*, 17 Kan. 542, 552 ; *Gleason v. Comm'rs of McPherson Co.*, supra), this character being imparted to it by reason of the statute, rather than by its inherent quality.

It is urged that the proceedings in *habeas corpus* by which Howard sought relief were but a prolongation and part of the original prosecution under which he was sent to the penitentiary, and that, inasmuch as Judge Sheldon might, if he had committed error in the imposition of the sentence, cause Howard again to be brought before him for sentence, he could compel this to be done by a proceeding in *habeas corpus*.   We do not agree to this contention.   Howard's proceeding was an entirely independent one ; it was one in which he was asking relief from the false imprisonment

which he alleged he was suffering at the warden's hands; he was contending that his rights were being violated. It was for the purpose of having this question settled that his action, or proceeding, was instituted. Of this subject-matter Judge Sheldon had jurisdiction, but he acquired no jurisdiction of this petitioner by the writ outside his district. As well might he claim jurisdiction of a non-resident defendant upon whom a summons had been served outside the state.

It is suggested that this view will result in hardship; that if there had been error in the imposition of a sentence, the judge imposing it would be deprived of the obvious right and duty of correcting such error, inasmuch as he would have no means of compelling the production of the criminal before him again to be sentenced. This does not necessarily follow, for were it ascertained in a proper manner, and in the proper forum, that error in this respect had been committed, the petitioner would, of course, be remanded to the court where sentenced for a proper sentence. Certainly no hardship could be imagined equaling the one that would result from a holding such as the respondent would have us make, for under such holding the probate judge of the remotest county in the state might require the production before him of every one confined, not only in the state penitentiary, but in all of the county jails and various houses of detention within the state—a result which would serve much to deter us from reaching such a conclusion, if deterrent were necessary.

We feel satisfied that Judge Sheldon had no jurisdiction to direct the issuance of the writ to run outside his district, and that its service upon the petitioner

*In re* Jewett.

outside such district gave the judge no jurisdiction of the petitioner; and, hence, that petitioner's arrest for contempt because of disregard of the void writ was without authority and void.

The petitioner will be discharged from custody.

All the Justices concurring.