FRANCKEN, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 10—June 21, 1926.*

*Bastardy: Trials in municipal court of Brown county: Right to change of venue: Sufficiency of affidavit: Statutes: Construction: Nature of bastardy proceedings: Issues: Settlement with complainant: Validity: Proceeding upon plea of guilty by defendant.*

1. Proceedings for change of venue are statutory in their origin, and where no statutory provision exists authorizing a change the right thereto is non-existent. p. 426.
2. A proceeding against a defendant for bastardy is neither a criminal nor a civil action, and is classed under the head of a special proceeding. p. 427.
3. Under the Municipal Court Act of Brown County as it existed in October, 1925, a defendant in bastardy proceedings had

a right to a change of venue on account of the prejudice of the judge in all cases where proper proceedings were taken within the time prescribed by the act.  p. 429.

4. In construing a statute the court must be governed by its wording and not by an unexpressed legislative purpose.  p. 432.

5. Under sec. 11, ch. 396, Laws of 1903, as amended by sec. 2, ch. 153, Laws of 1905, sec. 6, ch. 184, Laws of 1913, and sec. 2, ch. 224, Laws of 1915, relating to a change of venue from the municipal court of Brown county, the requirement that an affidavit for a change be based on positive knowledge is jurisdictional.  p. 434.

6. A settlement between the father and the mother of an illegitimate child, after the institution of bastardy proceedings and before trial, does not release the defendant where he failed to comply with sec. 166.03, Stats.  pp. 438, 439.

7. A bastardy proceeding being statutory, the legislature is authorized to fix the issues and the manner of trial.  p. 441.

8. Where a defendant in a bastardy proceeding pleads guilty, as provided in sec. 166.09, Stats., the court must take testimony as to the financial condition of the parties to determine the amount of judgment and security, but cannot determine any other issues.  p. 442.

ERROR to review a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge.  *Affirmed.*

Bastardy.  On November 3, 1924, upon complaint of one *Martha Fuerst,* the plaintiff in error (hereinafter called the defendant) was arrested on a warrant duly issued, and brought before said court, to which complaint the defendant pleaded guilty, waived preliminary examination, and was bound over for trial.  The complainant then commenced an action against the defendant to recover damages for breach of promise, and while the bastardy proceeding was pending in said court and after the breach of promise case had been commenced, and on the 9th day of December, 1924, the parties entered into an alleged agreement of settlement in writing, as follows:

"This is to certify that I release *Joe Francken* of all legal action that I started against him.  Received of *Joe Francken,* December 9, 1924, $400 in full settlement.

"(Signed)   MARTHA FUERST, City Green Bay, Wis."

This alleged settlement was entered into without the knowledge of the attorneys for complainant, who had appeared in behalf of the State upon the preliminary examination, and who were also her attorneys of record in the breach of promise suit; nor was such settlement approved by the public authorities, as provided by the statutes, or by the court.

Some months after the birth of the child, and on September 28, 1925, the parties appeared in court, and in the presence of the judge selected a jury as provided for in the Municipal Court Act of Brown County. The jury so selected was summoned to appear before said court on the 2d day of October, 1925, and on that day the defendant appeared and filed a plea of guilty to the complaint, and also interposed an alleged plea in bar, setting forth the alleged settlement.

On October 1st the defendant filed an affidavit of prejudice. The motion to change the venue was denied by the court upon the ground that it was not timely made, and the alleged plea in bar was overruled. The court thereupon proceeded to take the testimony of the parties, after which judgment was ordered and entered in the usual form in proceedings of this nature.

For the plaintiff in error there was a brief by *Smith & Smith* of De Pere and *Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *E. D. Minahan*.

For the defendant in error there was a brief by *Martin, Martin, Martin, Clifford & McHale* of Green Bay, and oral argument by *Gerald F. Clifford*.

DOERFLER, J. It is earnestly argued by the attorneys representing the State that the Municipal Court Act of Brown County does not provide for a change of venue in the trial of a bastardy proceeding. Proceedings for change

of venue are statutory in their origin, and where no stat-
utory provision exists authorizing a change the right thereto
is non-existent.     It has been the settled law of this state
since the case of *Baker v. State,* 56 Wis. 568, 14 N. W.
718, that a proceeding against a defendant for bastardy is
neither a criminal nor a civil action, and that it is classed
under the head of a special proceeding; that no change of
venue in such a proceeding is provided for either by sec.
261.08 (formerly sec. 2625) of the Statutes, or by sec.
356.03 (formerly sec. 4680).   Under sec. 166.02 (formerly
sec. 1531), the accused is entitled to a removal on a pre-
liminary examination.    The only other provision for a
change of venue is sec. 166.05, where a change of the place
of trial may be had where "it shall appear to the satisfac-
tion of the court by affidavit that a fair and impartial trial
cannot be had in such county, in which case the court may
direct that the accused be tried in some adjoining county
where a fair and impartial trial can be had."

If any authority, therefore, exists for a change of venue
in the instant case on account of the prejudice of the trial
judge, the provision must be contained in the Municipal
Court Act of Brown County.    The municipal court of
Brown county was created by ch. 396 of the Laws of 1903.
Under that act no change of venue could be taken from said
court in any criminal or bastardy examination, for sec. 11
of said act, among other things, provides:

"The general provisions of law relative to civil and crim-
inal actions before justices of the peace shall apply to said
municipal court so far as applicable, except that no change
of venue shall be taken from said court in any civil case
originally commenced in said court, *or in any criminal or
bastardy examination,* or criminal trial, except cases tried
upon information as hereinbefore provided."

This chapter was amended in 1905, in 1913, and in 1915,
but such amendments in no manner affect the original act

in so far as it denies a change of venue in a bastardy examination.

In the brief of counsel for the defendant it is correctly said: "The municipal court of Brown county was created by chapter 396, Laws of 1903. Therein no provision was made for change of venue except in criminal cases." Sec. 11 of ch. 396, Laws of 1903, was amended by sec. 6 of ch. 184 of the Laws of 1913 to read in part as follows (the new provisions added appearing in italics):

"The general provisions of law relative to civil and criminal actions before justices of the peace shall apply to said municipal court so far as applicable; provided that said municipal court shall have full power and authority to try and determine the question of title to realty in all cases when the question of title is raised; except that no change of venue shall be taken from said court in any civil case originally commenced in said court *of which a justice court would have jurisdiction* or in any criminal or bastardy examination, or criminal trial, except cases tried upon information as hereinbefore provided. *In all other cases of which a justice court would not have jurisdiction, any party thereto may, upon application, at any time before a jury is drawn for the purpose of a trial in said court, obtain a change of venue to the circuit court of said Brown county upon making affidavit that he has good reason to and does believe, that he cannot have a fair trial of such action in said municipal court on account of the prejudice of the judge thereof; and thereupon the said municipal court shall transmit all the papers, and a copy of the records of the proceedings in such cause properly certified to be such, to the said circuit court, which shall then proceed to hear and determine the same. . . ."*

Sec. 5 of ch. 184 of the Laws of 1913, among other things, provides, after stating that the general provisions of law which shall be in force relative to circuit courts, etc., shall relate also to said municipal court unless inapplicable, etc.:

"But in case of the change in the place of trial of any cause of which a justice court would not have jurisdiction,

or of any criminal case begun by information or *of any bastardy case* certified to said court, said case shall be removed to the circuit court for Brown county, unless such change is taken on the ground of prejudice of the people of said county. . . ."

It will thus appear from sec. 5 of ch. 184 of the Laws of 1913 that the act expressly contemplated a change of venue in bastardy cases on account of the prejudice of the judge, from the municipal court of Brown county to the circuit court for Brown county. The jurisdiction of the justice court under the general statutes is confined in bastardy cases to the examination. It has no jurisdiction to try bastardy proceedings. A bastardy trial is therefore included in that part of the amendment provided for by the act of 1913, which among other things provides: "In all other cases of which a justice court would not have jurisdiction;" and the proceeding for a change of venue in that act being clearly defined, the logical and irresistible conclusion is that the law as it existed by virtue of the amendment of 1913 gave the defendant in a bastardy case a right to a change of venue on account of the prejudice of the judge.

The only other amendment to the Brown County Municipal Court Act was enacted by ch. 224 of the Laws of 1915. A defendant in the trial of a bastardy proceeding in said municipal court of Brown county, therefore, is entitled to a change of venue on account of the prejudice of the judge, upon proper and timely proceedings having been taken in that behalf, unless such right granted by the amendment of 1913 has been taken away by virtue of the provisions of the amendment of 1915. That portion of the amendment of 1915 applicable to the subject reads as follows (the new provisions being indicated by italics):

"The general provisions of law relative to civil and criminal actions before justices of the peace shall apply to said municipal court so far as applicable; provided that said municipal court shall have full power and authority to try and determine the question of title to realty in all cases

when the question of title is raised; except that no change of venue shall be taken from said court in any civil case originally commenced in said court of which a justice court would have jurisdiction, or in any criminal or bastardy examination, or criminal trial, except cases tried upon information as hereinbefore provided. *In all cases of which a justice court would not have jurisdiction, wherein it shall be made to appear by affidavit that the municipal judge is pecuniarily interested in the action, a material witness or is within the forbidden degrees of consanguinity, or where, from prejudice or other cause, such affidavit states that said judge will not impartially decide in the matter, a municipal judge shall call in the county judge to try said action. That upon receiving notice of such demand from the municipal judge, the county judge shall proceed forthwith, or as soon thereafter as a hearing can be had, to hear, try and determine said action. That if at the time of receiving said notice the county judge is occupied in the trial of an action or proceeding in county court, then such action in municipal court shall be held open or adjourned until such time as it can be heard by the county judge. That when the county judge is so called in, he shall have all the powers of the municipal judge, and shall receive as compensation while acting as such municipal judge the sum of ten dollars per day in addition to his salary as county judge, which payment shall be made in the same manner as the salary of the municipal judge. . . ."*

An examination of the 1915 amendment as above set forth indicates that in the first line of the new provision the third word, "other," as it appeared in the amendment of 1913, was omitted. It is our view that the omission of this word "other" did not effect a material change in the statute as it existed prior to 1915, and that if the amendment of 1915 did not otherwise effect a change as to the removal of a cause, this omission had no material bearing upon the question herein involved. A justice court, under the statute, clearly has no jurisdiction to try bastardy proceedings. Its jurisdiction is confined to the examination. The legislature, therefore, when it uses the language in the

amendment, "In all cases of which a justice court would not have jurisdiction," of necessity refers, among other things, to a bastardy trial. Having by the act of 1913 expressly conferred the right to a change of venue on account of prejudice of the judge, it would appear that if it had been the legislative intent to take away such right, such change would have been expressed by clear and conclusive language. This the legislature failed to do, unless it can be said that counsel for the State are right in their deductions as contained in their brief that the language used is applicable only to actions, and not to special proceedings like that of a bastardy proceeding. In that behalf counsel for the State argue that the amendment, in so far as it prescribes the proceedings to be taken by affidavit, uses the term "action," and that the term "proceeding" or "proceedings" is not used; that in the *Baker Case, supra,* this court has expressly held that a prosecution for bastardy is not an action but a special proceeding; and that therefore the right to a removal is confined solely to actions either criminal or civil, and not to a bastardy prosecution, which is a special proceeding. This argument is ingenious but highly technical. A reading of the amendment of 1915 above referred to, together with that portion of the original act as amended by the legislature in 1913, reveals the legislative intent, which is to the effect that instead of removing the case upon an affidavit, as prescribed by the act of 1913, to the circuit court for Brown county, a different procedure is outlined where an affidavit is filed alleging the prejudice of the judge, to the effect that the county judge shall be called in to conduct the trial.

An examination of ch. 166 of the Statutes, being the chapter which authorizes the proceedings in bastardy cases, reveals the fact that the legislature, when it enacted the provisions of this chapter, did not have in mind the technical distinction between "action" and "special proceedings," as

is held in the *Baker Case, supra.* In sec. 166.02, entitled "Proceedings on return of warrant," the language used in the statute is as follows: "The accused shall be entitled to a removal of such *action* as in criminal examination before justices of the peace." In sec. 166.05, entitled "Change of venue," the statute reads: "All cases begun under the provisions of this chapter shall be tried in the county where the *action* is properly commenced. . . ." In sub. (2) of sec. 166.07, bastardy prosecutions are referred to as bastardy *cases.* In sec. 166.08 the proceedings are referred to as *a cause.* Even in the briefs of the learned counsel herein, who raised this technical distinction, similar expressions have been used, and it is a fact quite generally known that in referring to a bastardy proceeding the members of the profession frequently fall into the same error.

Counsel for the State also argue that the amendment of 1915 was enacted principally to prevent abuses which had theretofore obtained in the filing of affidavits of prejudice on the trial of personal injury actions for no other purpose than to delay the trial; that this amendment was suggested by a committee of the Brown county bar in the interests of promoting speedy trials and preventing delays. This may or may not be true; but if this was the object and purpose of the amendment it is not made clear by the act itself, and we must be governed by the wording of the act and not by a purpose which the legislature has failed to express.

It is therefore our opinion that under the Municipal Court Act of Brown County as it existed at the time the alleged affidavit of prejudice was filed, a defendant had a right to a change of venue on account of the prejudice of the judge in all cases where the proper proceedings were taken within the time prescribed by the act.

Counsel for the State next argue that, assuming that the defendant had a right to a change of venue on account of the prejudice of the judge, the affidavit filed did not

comply with the Municipal Court Act of Brown County. The affidavit filed, among other things, contains the following: "That affiant has good reason to believe, and does believe, that he cannot have a fair trial in such action in said court on account of the prejudice of the judge thereof." In the case of *Perrin v. State,* 81 Wis. 135, 50 N. W. 516, the calling in of a judge amounts to a change of venue. In the opinion in that case it is said:

"Although the calling in of another judge is not strictly a change of venue, because it does not change the place of trial, still it accomplishes all the purposes legitimately aimed at by a change of venue for prejudice of the judge. It furnishes another presiding judge as effectually as if the place of trial was in fact changed."

Here again it must be distinctly borne in mind that the right to a change of venue, if it exists at all, must be created by statute. The legislature can grant such right, and when granted, by subsequent enactment can deny it. The supreme authority upon the subject being vested in the legislature, this body can impose such terms and can prescribe such necessary requisites as it deems fit. It can authorize a change upon an affidavit alleging prejudice based on information and belief, or on belief solely, or on information alone. It can require as a condition precedent that the affidavit shall allege such prejudice upon positive knowledge. The provision for a change of venue herein involved is not based upon the general statutes applicable to circuit courts generally throughout the state, but upon the provision contained in the Municipal Court Act of Brown County. The amendment of 1915, as far as applicable, reads as follows:

"In all cases of which a justice court would not have jurisdiction, wherein it shall be made to appear by affidavit . . . where, from prejudice or other cause, such affidavit states that said judge will not impartially decide in the matter, a municipal judge shall call in the county judge to try said action."

The form of affidavit, therefore, prescribed differs materially from that provided by the general statutes applicable to circuit courts in civil or criminal actions. The proposed affidavit complies with the general statutes, but not with the provisions of the Municipal Court Act of Brown County. This latter act, in clear language, requires a statement by affidavit that is positive; in other words, one that states that said judge will not impartially decide in the matter. There is a material distinction between positive knowledge and a belief, as appears from the following cases, cited in the brief of counsel for the State: *Humphreys v. McCall,* 9 Cal. 59; *Iron Silver M. Co. v. Reynolds,* 124 U. S. 374, 8 Sup. Ct. 598; *State v. Harris,* 97 Iowa, 407, 66 N. W. 728; *Ohio Valley C. Co. v. Goble,* 28 Ind. App. 362, 62 N. E. 1025. In *State v. Harris, supra,* it is said: "Belief admits of all degrees, from the slightest suspicion to the fullest assurance." In 1 Words and Phrases, 740, it is said: " 'Belief' and 'knowledge' are not synonymous, and where a statute related to patenting mines where a lode was 'known' to exist, the court could not use the term 'belief' synonymously in its charge with 'knowledge.' " The statutory requirement is jurisdictional. *Smith v. Clarke,* 70 Wis. 137, 35 N. W. 318.

The affidavit for a change of venue, therefore, did not comply with the statutory requisites as contained in the Municipal Court Act of Brown County, and the motion for a change of venue was consequently properly denied.

When the case came on for trial the defendant pleaded guilty to the charge in the complaint, and at the same time filed his plea in bar, based upon the alleged settlement hereinbefore referred to. No reply was filed by counsel for the State to this plea, and the court overruled it on the ground that the alleged settlement could not operate as a release of the defendant under the statutes, because the statutes had not been complied with.

The provisions of ch. 166 of the Statutes, with but few changes, are contained in the Statutes of 1849, and, notwithstanding the lapse of the many years intervening between that time and the present, no case squarely presenting the identical question herein raised has come before this court. The position taken by the learned counsel for the defendant, if approved by this court, would largely emasculate the provisions of the statutes on bastardy. Ch. 166 of the Statutes does not only define a procedure, but by it is created substantive law, declaratory of the public policy of the state on the subject of bastardy. What, then, did the legislature have in mind when it enacted these statutes? What purpose did it intend to serve in the interests of the public; and what protection did it contemplate for those involved in such a proceeding; and upon whom did it design the placing of any burdens? In the first place, it singled out from the children of the state, who are its wards, illegitimate children, and placed them in a separate class, for it needs no argument to realize that such children, owing to the peculiar situation surrounding them, must be afforded special protection, not only that the child may be afforded nurture, education, and support, but that it may be raised under such circumstances as will constitute it at maturity a useful citizen of the state. It is therefore the prospective birth of an illegitimate child, and its welfare after birth, that have been instrumental in moving the legislature to action, and a careful examination of these statutes will reveal that the primary object of the legislature was to secure the protection and welfare of the child. When it comes to protective legislation of this kind, it is meet and proper that the innocent should receive primary attention. Therefore the legislature had in view not only the interests of illegitimate children as a class, in so far as such class required special legislation, but, beyond that, it was also realized that unless this class became the recipient

of the beneficent power of the law-making body the result might be detrimental to the best interests of the public. We have therefore two parties interested in a bastardy proceeding, who may be termed innocent parties, viz.: first, the child; and second, the public; and as between the two, it being apparent that the subject of the legislation is the child, the principal object is the welfare of the child, and the secondary one that of the public. Neither the father nor the mother of an illegitimate child can properly be classed as innocent parties unless the pregnancy resulted under circumstances which would constitute rape; therefore, in the ordinary bastardy case, and under the facts herein involved, the parents of the child, by reason of the illicit relations resulting in the birth of the bastard child, cannot be deemed to be in the same class with the parties first named.

The mother, however, who has given birth to the child and upon whom largely rests the responsibility to nurture, educate, and raise the child, and who to a greater extent must bear the humiliation and disgrace of the unfortunate situation, under a proper construction of the act is next in order in the consideration of the court. Whether the child be legitimate or illegitimate, there is nothing in the world that equals the devotion, the love and affection which a mother bears to her own flesh and blood. This is manifested not only in the human race but in the animal kingdom. The duty to protect and provide for the helpless offspring, under the laws of nature devolves upon the male of the human species. He is endowed with superior strength and agility for that purpose. This is everywhere recognized by human laws, and in shifting the burden upon the male in that behalf the law-making bodies have taken cognizance of natural laws. Therefore, whether a child is legitimate or illegitimate, the burden to provide for such

child is primarily placed upon the male. It is a deplorable fact, commonly observed in bastardy cases, that the father of an illegitimate child, even though he confesses his paternal relation, does not readily or willingly assume his natural and civil obligations. Why this is so is unexplainable. The child is of his flesh and blood, as much so as it is of the mother, and every instinct of human nature would suggest a willing and ready volunteering on his part to perform his duty toward his offspring, so that the latter might travel the path of life along the lines of least resistance. Even in the animal kingdom the male manifests an interest in the welfare of the offspring until it is able to provide and care for itself.

The foregoing, as we view it, comprises and embraces the logic that was in the mind of the legislature when it enacted ch. 166, by which it created stringent laws placing the burdens upon the father of the illegitimate child for the protection of the innocent parties above mentioned, and of the mother, who would otherwise, in most instances, be helpless.

Sec. 166.03 reads as follows:

"If the accused person shall pay or secure to be paid to the female complaining such sum of money or other property as she may agree to receive in full satisfaction and as shall be approved by the supervisors of the town, of which agreement and approval the justice shall make a memorandum on his docket, and shall also give bonds with sufficient sureties, to be approved by the justice, to the town in which she shall reside, or if she shall reside in a county which has abolished the distinction between county poor and town poor, to such county, conditioned to secure and indemnify such town (or county, as the case may be) from all charges for the maintenance of such child and shall also pay all expenses, if any, incurred by such town or county for the lying-in and the support and attendance upon the mother during her sickness and the costs of prosecution

and further conditioned to support and maintain such child until it is sixteen years of age the justice shall discharge such accused person."

The section last quoted presents the only legislative scheme under which a defendant in bastardy, when he is brought before the examining magistrate, can obtain his release from custody. Unless he complies with this provision and there is probable cause to believe the accused person guilty, the justice must bind the defendant in a recognizance as provided by sec. 166.04. The statute does not merely provide for a payment of money or for the giving of security to the satisfaction of the female complaining, but the amount paid or the security given must also be approved by the supervisors of the town, etc., thus evincing a well defined protection of the interests of the parties heretofore referred to. To hold that at that stage of the proceedings the father and the mother of the illegitimate child may make a settlement satisfactory to them, without the approval of the public authorities, would convict the legislature of a meaningless statute and would result in a substantial emasculation of the statutory provisions. If the father and the mother can then settle for any sum agreeable to them, no interest excepting that of the father may be afforded protection. It stands to reason that the mother of an illegitimate child, in many instances, under the distressing circumstances which accompany such a situation, is not mentally in a condition where she can form a rational and deliberate judgment, and therefore the state has seen fit to impose certain conditions and restrictions which must be complied with before a settlement can be effected. It may also further be said that the statutes above referred to are clear, explicit, and unambiguous, so that they are not subject to a construction different from what their language denotes.

The only other statutory provision pursuant to which

a defendant can receive his discharge becomes operative after he has been adjudged the father of the child, or has acknowledged his paternity of the child. Under sec. 166.10, Stats., a defendant must give a bond to the proper town or county in such sum and with such sureties as shall be approved by the court, conditioned for the performance of such judgment and the payment of all sums ordered thereby to be paid as therein directed; he is also required to pay the costs of prosecution and any sums adjudged then to be paid; otherwise he shall be committed to the county jail, etc. What has heretofore been said with reference to a discharge before he is bound over on the examination is of equal force and applicable to the situation developed after he has been bound over for trial to the court. Not having entered into an agreement with the complainant as provided for by sec. 166.03, and not having complied with the provisions of sec. 166.10, and further having failed to comply otherwise with the judgment, and not having been discharged under the provisions of sec. 166.11, the judgment is in full force as entered. *Getzlaff v. Seliger,* 43 Wis. 297.

We approve the excellent logic in the decision of the case of *Perkins v. Mobley,* 4 Ohio St. 668, in which the bastardy statutes of the state of Ohio, substantially like our own, have been ably construed. We believe such construction in harmony with the spirit of the act, and the decision in that case applies with equal force to the issue involved herein. See, also, *State v. Dougher,* 47 Minn. 436, 50 N. W. 475; *Durland v. Durland,* 62 Neb. 813, 87 N. W. 1048. In the case of *Peters v. Killian,* 63 Neb. 57, 87 N. W. 1049, the following appears in the opinion:

"Proceedings in such cases [bastardy proceedings] are purely statutory, and the courts can try such issues and make such orders in them as the statute contemplates and none other. A settlement between the parents of an illegitimate child, in order to be operative as a stay or termi-

nation of such proceedings, must be of such nature and made and attested in such manner as the act prescribes; and the district court can take judicial cognizance of none other."

We are referred by defendant's counsel to the case of *Meyer v. Meyer*, 123 Wis. 538, 102 N. W. 52, and it is claimed that that case is an authority under which the alleged settlement should be approved. In that case, as will appear from the first section of the syllabus, "the defendants as principal and surety gave plaintiff a bond which recited the arrest of the principal on a charge of bastardy upon the plaintiff. The recited consideration of the bond was the withdrawal and abandonment of such proceedings, and an agreement of marriage with and support of the prosecutrix." The defendant failed to comply with the provisions of the instrument, and for such breach the action was commenced by the prosecutrix against the principal and surety on the bond. In that case it was held that the agreement in suit was not void or against public policy. It is also said that such settlements are not only dictated by the highest sentiments of honor and duty, but are in entire harmony with the policy of the statute. "They recognize not only a legal but a high moral obligation on the part of the wrongdoer to repair as far as practicable the injury done by him, and should be and are viewed by courts with high favor rather than disfavor. . . ." It is also said in that case that a settlement made by the accused without the approval of the public authorities "is a waiver by him [the defendant] of the statute, and also by the woman, so far as she is competent in that regard." Clearly, where a defendant executes a bond for the benefit of the prosecutrix in a bastardy case he waives the statute. It is not held, however, that the prosecutrix waives the statute, for the opinion says that she waives it as far as she is competent to do so. Here there is a clear recognition of the provisions of the bastardy

act in accordance with the construction we have heretofore placed upon it.   If the prosecutrix waives anything, she merely waives that which under the law is designed for her individual benefit, and not that which is intended for the benefit of the infant or of the public.   It also appears to us that the statement in the opinion respecting the conditional waiver of the prosecutrix is mere *obiter*.

The case of *Smith v. State*, 146 Wis. 111, 130 N. W. 894, is also cited by defendant's counsel, in which it was said that a bastardy proceeding, "when instituted by the mother, is a proceeding for her benefit and protection to enforce the father's natural obligation to support his child." Citing *Baker v. State*, 56 Wis. 568, 14 N. W. 718, and *Barry v. Niessen*, 114 Wis. 256, 90 N. W. 166.   While the remedy is primarily, as is said in the *Smith Case*, for the benefit of the mother, it is so because the mother is the natural guardian for the child; because the child is in the custody of the mother, and out of either her own means or the means which result from the institution of the bastardy proceedings she is under obligation to provide for the nurture and education of the child.   No case holds that the amount received either in settlement or by judgment belongs to her as a matter of right, to be disposed of in any manner as she deems fit.   She is authorized to become the recipient of the fund designed principally for the benefit and protection of the child, and the law recognizes her as the natural guardian and the most suitable person, under all the facts and circumstances, in order to make effective the provisions of the statutes.

To the charge of bastardy the defendant pleaded guilty, both on the preliminary examination and on the trial.   A bastardy proceeding not being an action, either criminal or civil, and the proceeding being statutory in its origin, the legislature was authorized to and did fix the issues and the manner in which they should be tried.   Under sec. 166.09

the issue to be determined consists of whether the accused is guilty or not guilty. "If the accused shall be found guilty or shall admit the truth of the accusation he shall be adjudged to be the father of such child and shall stand chargeable with its future maintenance in such sum and in such manner as the court shall direct," etc. When the defendant has been adjudged guilty or has pleaded guilty, nothing remains for the court to do except to take testimony as to the financial condition of the parties, in order to determine the amount to be included in the judgment and the security to be given. When that is done and the judgment is entered, there is no authority under the statutes to hear and determine any other issue. Under these circumstances, we are constrained to affirm the judgment of the lower court.

*By the Court.*—Judgment affirmed.