No. 29,877.

In the Matter of the Application of WILLIAM BOLMAN for a Writ of Habeas Corpus.

(292 Pac. 790.)

Opinion filed November 8, 1930.

*Clyde L. Short, Charles L. Hunt* and *Frank C. Baldwin,* all of Concordia, for the petitioner.

*Ralph H. Noah,* county attorney, for the respondent.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in habeas corpus. The application for the writ alleged, in substance, that the petitioner is a resident of Cloud county, Kansas; that he is unlawfully deprived of his liberty by Clyde C. Wilson, sheriff of Mitchell county,

Kansas, and held in the county jail of that county on a warrant issued out of the court of W. H. Young, a justice of the peace of Mitchell county, which warrant was based upon a complaint sworn to by a resident of Cloud county, Kansas, charging the petitioner with bastardy; that the relatrix, in swearing to the complaint before a justice of the peace of Mitchell county, instead of some justice of the peace of the county of the residence of herself and of the petitioner, did so in conspiracy with others to deprive the petitioner of the right of a trial in the county where the parties resided, which county, or the courts thereof, had jurisdiction of the subject matter, as well as of the parties; that it is not claimed that any offense was ever committed in Mitchell county, or that the child was, or ever would be, a public charge of any county other than where the parties reside, and was for the purpose, among other things, of depriving the petitioner of a trial in the county of the residence of both parties; that by reason of these facts the court out of which the warrant was issued had no jurisdiction.

The hearing in this court was upon the application for the writ. Notwithstanding the fact that no writ, either peremptory or in the alternative, was issued, "The State of Kansas" has filed a "motion to quash alternative writ," in which it was alleged that the justice of the peace of Mitchell county had jurisdiction over the petitioner and of the subject matter of the proceeding, and that the relatrix in that proceeding was, and is, a resident of Mitchell county since a date prior to the issuance of the warrant in that proceeding; and in support of the allegations of residence affidavits were filed that she became a resident of Mitchell county on the day before the warrant was issued. This motion to quash cannot be considered, for the reason that no alternative writ was issued, and for the further reason that "The State of Kansas" is not a party to the proceeding in this court. In fact, it is a party to the proceeding in the justice court in the sense only that it has loaned its name and the use of its county attorney for the purpose of conducting the proceeding. The sheriff, Clyde C. Wilson, has filed a "return . . . to the writ of habeas corpus . . ." which sets out a copy of the warrant issued by the justice of the peace and avers that in pursuance thereof he had arrested the petitioner and taken him into his custody before the justice of the peace court from which the warrant was issued, which court fixed the bond at $5,000, which bond was not given, and made as a part of the return the affidavits filed in this court by the relatrix

in the bastardy proceeding that she was a resident of Mitchell county, and had been since September 1, 1930, on which date she moved to that county for the purpose of making it her residence, and that she did not intend to return to Cloud county. This instrument cannot be treated as a return to the writ for the reason that no writ had been issued, but the court will treat it as an informal answer to the application for the writ. In effect it admits the pertinent allegations of the application for the writ except as to the residence of the relatrix in the bastardy proceeding at the time she filed the affidavit before the justice of the peace of Mitchell county. So treated, it presents an issue to the question of the place of residence of the relatrix at that time.

Turning to the legal questions. Respondent contends that habeas corpus will not lie to inquire into the questions sought to be raised by the petitioner for the reason that it is a question which could have been raised in the progress of the trial in the court below and presented to this court on appeal, and that habeas corpus cannot be used as a substitute for appeal, citing R. S. 60-2213 and cases cited thereunder. It is true that habeas corpus is not a substitute for appeal, and where questions sought to be raised by habeas corpus relate only to irregularities, or even prejudicial error, in the conduct or proceeding of an action, such irregularities or errors must be brought to the attention of this court by appeal; but where the contention is made that the court, in conformity to the orders of which the petitioner is held in custody, is without jurisdiction to make any order in a particular proceeding, the remedy by habeas corpus is not only available, but is the proper remedy. In 29 C. J. it is said:

"A judgment or order under which the petitioner is held must be void for want of jurisdiction, and not merely erroneous and voidable, . . . Habeas corpus lies only to determine the question of the jurisdiction and lawful power of the custodian to hold petitioner in custody; it is not available as a substitute for an appeal or writ of error or other revisory remedy for the correction of errors either of law or fact, at least not in the absence of exceptional circumstances." (pp. 24, 25.)

See, also, 12 R. C. L. 1185; 9 Enc. Pl. & Pr. 1045.

Here the petitioner contends that the court out of which the warrant was issued, by virtue of which he was taken into custody, was without jurisdiction to entertain the complaint of the relatrix or to issue the warrant. In our own cases, when the challenge was to the jurisdiction or power of the court on the order of which the petitioner

was held in custody, the remedy by habeas corpus is held to be available. (*In re Snyder, Petitioner, etc.,* 17 Kan. 542; *In re Smith, Petitioner,* 52 Kan. 13, 33 Pac. 957; *In re Norton,* 64 Kan. 842, 68 Pac. 639; *In re Jarvis,* 66 Kan. 329, 71 Pac. 576; *In re McNeil,* 68 Kan. 366, 74 Pac. 1110; *In re Jewett,* 69 Kan. 830, 77 Pac. 567; *In re Spaulding,* 75 Kan. 163, 88 Pac. 547.)

But if that question were waived, or the question presented related only to errors or irregularities, the remedy was held not available. (*In re Dill, Petitioner,* 32 Kan. 668, 5 Pac. 39; *In re Brown,* 62 Kan. 648, 64 Pac. 76; *In re Gray,* 64 Kan. 850, 68 Pac. 658; *In re Terry,* 71 Kan. 362, 80 Pac. 586; *In re Hornung,* 81 Kan. 180, 105 Pac. 23; *In re Sills,* 84 Kan. 660, 114 Pac. 856; *In re McKenna,* 97 Kan. 153, 154 Pac. 226; *In re Will,* 97 Kan. 600, 155 Pac. 934; *In re Owen,* 109 Kan. 695, 200 Pac. 1070.)

Our statute (R. S. 60-2213), setting out the circumstances under which habeas corpus is not applicable, does not prohibit the inquiry into the question of the jurisdiction here sought to be raised.

Passing now to the principal question sought to be raised by this proceeding, namely, whether the justice of the peace of Mitchell county had jurisdiction to entertain the complaint and issue the warrant by virtue of which the petitioner was taken into custody. This question of jurisdiction really turns on a question of venue, for it is not contended that justices of the peace do not have jurisdiction in bastardy proceedings. For the purpose of determining this question we shall take as true the allegations of the application for the writ, namely, that both the relatrix and the defendant in the bastardy proceeding were residents of Cloud county, and that the relatrix, for the purpose of avoiding the jurisdiction of the court in the county where she and the defendant both were raised, went to Mitchell county and made her complaint before a justice of the peace of that county. The question, therefore, is: Can the venue be laid in Mitchell county so as to give a justice of the peace of that county jurisdiction to entertain the complaint, issue the warrant and conduct the proceeding? If this question be determined adverse to the petitioner it will not be necessary to take evidence relating to, and later to determine, whether the fact that the relatrix went from Cloud county to Mitchell county the day before she filed her complaint before the justice of the peace, was for the purpose, in good faith, of establishing her residence in Mitchell county, or whether it was part of a conspiracy to avoid the jurisdiction of the courts of Cloud county. Combined with the argument

on this point is a discussion of the nature of the bastardy proceeding outlined by our statute (R. S. 62-2301 to 62-2321), that is, whether it is a civil or criminal or a special proceeding, and also the purpose of the statute. For the purpose of determining the question before us we need not concern ourselves with whether the procedure outlined by the bastardy act should be classified as a civil or a criminal or a special proceeding. It is sufficient to say that our bastardy act was passed in 1868 (G. S. 1868, ch. 47). That act repealed an earlier statute relating to the same subject (Laws 1859, ch. 82; Comp. Laws 1862, ch. 109). Neither of these statutes was ever embodied in any of the codes of civil procedure, or criminal procedure, adopted in this state. Neither did they constitute a part of the crimes act. In all of our statutory compilations prior to the revision of 1923, the bastardy act was given a place under the title "Illegitimate children," separate from any code of procedure. The fact that the revisers of our 1923 statutes placed it as the last article under criminal procedure did not change the nature or purpose of the statute, nor make the procedure provided for therein any more criminal than it had been previously. The bastardy act is a statute separate from codes of civil or criminal procedure, enacted for the purpose, as indicated by its title, of "providing for the maintenance and support of illegitimate children." To accomplish that purpose it provides a procedure of its own. This procedure is outlined in the statute itself, step by step, so far as the legislature deemed it necessary to do so, but the statute itself provides:

". . . the rules of evidence and the competency of witnesses shall be the same as in civil cases." (R. S. 62-2303.)

And further provided:

"The trial and proceedings of such prosecution, both before the justice and in the district court, shall in all respects not herein otherwise provided for be governed by the law regulating civil actions." (R. S. 62-2308.)

We therefore look to the law relating to civil actions for procedure only on such points or questions as the bastardy act itself is silent, or for which it makes no provision. (*State, ex rel., v. Murphy,* 120 Kan. 350, 243 Pac. 288.) The question of the venue of a bastardy proceeding is one concerning which the bastardy act is not silent. It provides (R. S. 62-2301) that the complaint may be made "before any justice of the peace." More than forty years ago this court had occasion to construe that language and it was held

to mean just what it says, "any justice of the peace." The syllabus reads:

"A prosecution under the act providing for the maintenance and support of illegitimate children is not local, but may be brought in any county or before any justice of the peace of the state; and the warrant issued by a justice of the peace may go to and be served in any part of the state where the defendant may be found." (*In re Lee, Petitioner,* 41 Kan. 318, 21 Pac. 282.)

In the opinion, after discussing the purpose of the statute and referring to some of its provisions, and with respect to the place where the action might be brought, it was said:

"But as we have seen, the act is not silent on that subject. It provides that the proceeding may be begun before *any* justice of the peace, and hence in any county or township of the state. . . . Being 'otherwise provided' in the bastardy act, the provisions of the code as to where actions shall be commenced, do not apply; . . ." (p. 321.)

This case has been cited approvingly in *State v. Jehlik,* 66 Kan. 301, 304, 71 Pac. 752; *Poole v. French,* 71 Kan. 391, 393, 80 Pac. 997; *State, ex rel., v. Murphy,* supra. It is also cited in the notes, 7 C. J. 975, as giving the rule in Kansas with respect to the venue of bastardy proceedings. The decision has never been reversed or modified, nor has the statute been changed, and it is controlling in this case.

The question of venue arose in the case of *Moore v. State, ex rel.,* 47 Kan. 772, 28 Pac. 1072. In that case the complaining witness was a resident of Illinois and her child was born in that state and resided there. She came to Wyandotte county and filed a complaint before a justice of the peace. The question was whether the proceeding could be maintained. It was held:

"If the putative father of a bastard child is a resident of this state, the mother can institute proceedings against him under our statute, even if the mother and child are residents of another state." (Syl.)

This holding is in harmony with that in *In re Lee, Petitioner,* supra, although that case was not cited. On the venue point it is cited approvingly in *Costigan v. Stewart,* 76 Kan. 353, 357, 91 Pac. 83. It is also cited in 3 Enc. Pl. & Pr. 270; 7 C. J. 968; 3 R. C. L. 751, 758, 760; *State v. Etter,* 24 S. D. 636. The petitioner argues that our statutes (R. S. 61-101, 62-602, 63-101) limit the jurisdiction of justices of the peace to their respective counties. Our constitution (art. 3, § 9) provides that the powers and duties of justices of the peace shall be prescribed by law. The

fact that by the section of the statute referred to the jurisdiction of justices of the peace is confined to their respective counties did not exhaust the legislative authority granted by the constitution. Notwithstanding these statutes, the legislature still had constitutional authority to grant to justices of the peace such powers, and confer upon them such duties, as it deemed proper, and in passing the act providing for the support and maintenance of illegitimate children it conferred powers and imposed duties on "any justice of the peace" in the state without restricting those powers and duties to the place of residence of any of the parties interested in the proceeding.

There is quite a little in brief of petitioner concerning the purpose of the statute. Comments, either general or specific, have been made on that point in previous decisions of this court. (*Willetts v. Jeffries*, 5 Kan. 470; *In re Wheeler, Petitioner*, 34 Kan. 96, 8 Pac. 276; *In re Lee, Petitioner*, supra; *Moore v. State, ex rel.*, supra; *State, ex rel., v. Murphy*, supra.)

The underlying reasons for the enactment of a statute of this character are discussed at length in *Francken v. State*, 190 Wis. 424. An extended discussion is not deemed necessary here. Generally speaking, it is at least the moral duty, both of the father and the mother, to provide for their children, whether they be legitimate or illegitimate. (*Willetts v. Jeffries*, supra; *Doughty v. Engler*, 112 Kan. 583, 211 Pac. 619.) With respect to illegitimate children, it is not unusual for the father, even though he admits his paternity, which frequently he does not do, to fail or refuse to aid in the support or education of such child. At common law he could not be required to do so. For that reason statutes have been enacted in many, if not all, of the states by which the paternal relation of the father to the illegitimate child may be established, if it is questioned, and he may be required to contribute to the child's support. The early statutes on this question were designed, primarily, to prevent the child from becoming a public charge. The early statute in this state, Laws 1859, ch. 82, required that the complainant be a resident of the territory, and that if a settlement were made and bond given for support, it must be approved by the township officers, that the proper township officers might institute the proceedings if the mother did not. These things were omitted and other important changes made in the statute of 1868. A broader view of the matter was taken. See *Moore v. State, ex rel.*, supra. The state is interested in

seeing not only that a child has food and clothes and a place to live, but that it has education and is reared under such circumstances as to make it become a useful citizen of the community. Hence, the child and the state, both innocent of any wrongdoing, are interested in seeing that the child receives not alone the necessities of life, but its advantages. The fundamental purpose of the statute was to bring that about in so far as it could be done. This is attempted by a statute enacted under the broad police powers of the state, and the statute is framed and designed, and its procedure specifically provided, to accomplish its purpose under varying conditions which may arise. With respect, therefore, to the jurisdiction of courts to hear and determine questions arising in the matter, and the venue of the proceeding, it is necessary to look to the statutes of the particular state. (See 7 C. J. 974, 975, and cases collected in Decennial Digest, Bastards, §§ 35, 36.) As we have previously seen, our statute places jurisdiction to initiate the proceedings in justice courts and places the venue in any justice of the peace in the state. The statute was so interpreted many years ago. It is argued if this interpretation be adhered to that it is subject to abuse, in that even though the complainant and putative father be residents of the same county, complainant might go into any county in the far part of the state and initiate the proceeding. Possibly the statute might be open to abuses of that character, but the instances in which reputable counsel would indulge in that practice, or permit it to be done, are so rare that it would seem the possibility of such abuse need not be taken into account. If it were found to be abused in that respect, no doubt the legislature would correct it.

From what has been said it necessarily follows that the writ applied for in this case must be denied.

It is so ordered.