## *Ex parte* HUNT.

### Opinion delivered October 30, 1911.

1. BAIL—JURISDICTION OF CHANCELLOR.—Where a chancellor denies an application for bail, he has authority at the time of such denial to order the stenographer who took down the testimony to produce a transcript of it, where that is requested for review in the Supreme Court. (Page 421.)

2. SAME—JURISDICTION OF CHANCELLOR.—Where a chancellor hears and determines an application for bail at chambers, his jurisdiction ceases when he renders judgment, and he can not thereafter make a valid order concerning the proceedings, nor punish for disobedience of such order. (Page 422.)

3. CONTEMPT—DISOBEDIENCE OF ORDER—JURISDICTION.—One can not be punished for disobeying an order which is void because rendered without jurisdiction. (Page 422.)

Certiorari to Pulaski Chancery Court; *John E. Martineau*, Chancellor; judgment quashed.

*S. J. Hunt, T. Havis Nixon* and *Sorrells & Whitelaw*, for petitioner.

1. The chancellor had no jurisdiction to issue, hear and determine the writ of habeas corpus in the Rhea case. Acts 1871 p. 260; art. 7, sec. 37, Const. 1874; Kirby's Dig. §§ 3834, 3836, 3856, 3839, 3840; 133 S. W. (Ark.) 1017; 45 Ark. 162; 20 Ark. 498; 8 Cur. Law, 1989; 6-*Id.* 1538; 88 S. W. 250; 104 S. W. 731; 29 Ark. 354, 356.

The jurisdiction of the court in that case is essential to the validity of the judgment in this proceeding. In the absence of jurisdiction, the judgment for contempt is a nullity. 9 Cyc. 10; 91 Ark. 527; 93 Ark. 307.

2.   If the chancellor ever had jurisdiction, which is denied, it ceased when on the hearing of the testimony the court decided adversely to the petitioner, Rhea, and remanded him into the custody of the sheriff, and this order left nothing further before the court necessary to be determined.   A transcript of the evidence was not necessary to complete the record, because the statute regulating appeals and certiorari to this court was not abrogated by the official court stenographer's act.  Kirby's Dig. §§ 6222, 6223; 6 Cur. Law 1553; 76 N. E. 364.   But in this case there was no official stenographer.   Sternberg, who took down the evidence at the instance of the attorney for the State, was never designated as official reporter by the court, or as officially reporting the case.   Acts 1899, p. 64; 24 Am. and Eng. Enc. of L. 165; 10 Ark. 556; 5 Ark. 19; 76 S. W. 385.

The production of documents will not be allowed for a general examination for mere "fishing" purposes, or with a view to find evidence to be used in another suit, or to ascertain whether a party has a cause of action or ground of defense, or to gratify mere idle curiosity.   4 Enc. of Ev. 813; 71 Am. St. Rep. 720.

3.   The punishment adjudged is excessive,  This court will quash a judgment for  contempt which inflicts a mode or degree of punishment not warranted by law.   22 Ark. 151; Cooley's Con. Lim., 401; 9 Cyc. 69.

*Hal. L. Norwood*, Attorney General, and *William H. Rector*, Assistant, in reply to petitioner.

1.   The chancellor had authority to issue the writ in the Rhea case, and, having such authority, he undoubtedly had the authority to hear and determine it if in the county where it was served there was no proper judge to perform that judicial function.

2.   The chancellor had the right and the authority to have his record made up and to allow the accused (Rhea) to have his decision reviewed.

3.   The punishment, though unusual, was within the court's discretion.

McCULLOCH, C. J.   The petitioner, S. J. Hunt, was adjudged guilty of contempt for disobedience of an order of the chancellor of the First Chancery District at chambers, and he brings the record here on certiorari for review.

On June 28, 1911, W. S. Rhea, who was confined in the Jefferson County jail to wait the action of the grand jury on a charge against him of murder, applied to the chancellor of this district for a writ of habeas corpus, to the end that he might be admitted to bail. The writ was duly issued, and on July 7, 1911, the chancellor, after hearing the evidence of witnesses, decided that said accused was not entitled to bail, and ordered that he be remanded to the custody of the sheriff of Jefferson County, to be held under the commitment. At the hearing of that cause before the chancellor, the petitioner, Hunt, who is an attorney at law, appeared as counsel for the prosecution, and the oral testimony was taken down by a stenographer employed by those interested in the prosecution. It is claimed that during the process of the hearing before the chancellor said stenographer agreed with counsel for Rhea to act for both sides, and to furnish counsel on either side a transcript of the testimoney when called upon to do so. This is denied, but the chancellor has found it to be so; and, as the testimony is conflicting, we will, for the purposes of this case, treat the finding of the chancellor on this point as being correct. Said stenographer subsequently made a transcript of the testimony and delivered the same, together with his notes, to said petitioner herein, and on July 31, 1911, the chancellor, on motion of counsel for Rhea, who were preparing to bring the bail case here for review, made an order directing the petitioner to file said transcript with the clerk of the Pulaski Chancery Court, and upon his refusal to comply with said order he was cited for contempt. On the hearing of the matter the chancellor adjudged the petitioner to be in contempt, and imposed punishment by fine and imprisonment.

The first contention is that the chancellor of this district had no authority under the statute to hear and determine a question of bail where the prisoner was confined on commitment for crime in another county and district, and that his proceedings were without jurisdiction and void; but as the case is to be disposed of favorably to the petitioner on another ground, we need not discuss that point.

The statute makes it the duty of a circuit judge or chancellor to return "the proceedings upon a writ of habeas corpus * * * to the clerk of the circuit court of the county in which the

writ was heard, or the court in which the prosecution, if any, is pending." Kirby's Digest, § 3876. This includes a transcript, duly certified by the chancellor or judge, of the testimony adduced at the hearing where that is requested for the purposes of a review in the Supreme Court. Chief Justice ENGLISH, speaking for the court in Ex parte *Good,* 19 Ark. 410, where the correct practice in such cases is fully outlined, said:

"It is doubtless, however, necessary and proper for the court or judge to make some memorial of the facts disclosed upon the examination, in order to enable the prisoner, if the bail is refused, to apply to the supervisory tribunal for a revision of the judgment."

The chancellor undoubtedly had the power to order the stenographer who took down the testimony to procure a transcript of it for use in complying with the duty prescribed by the statute referred to above, but the question now arises, at what time may the order be made? It must, of course, be made while the jurisdiction still exists. When the judge or chancellor hears and determines a matter on habeas corpus at chambers, his jurisdiction ceases when he renders his judgment. Nothing then remains to be done except to return the proceedings to the clerk of the proper court. He cannot thereafter make a valid order concerning the proceedings. If he makes an order at the time he renders final judgment, he can thereafter punish for disobedience of that order; but he cannot take any further steps in the proceedings under the writ after his final judgment is rendered. We are, therefore, of the opinion that the order of the chancellor requiring petitioner to file transcript of the testimony was void, and he can not be punished for disobeying it. *Pitcock* v. *State,* 91 Ark. 527. The judgment is therefore quashed, and the proceedings dismissed.