No. 23,861.

THE KAW VALLEY DRAINAGE DISTRICT OF WYANDOTTE COUNTY, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Appellant*.

SYLLABUS BY THE COURT.

1. MANDAMUS—*Discretionary Writ—Principles Which Govern in Action in Mandamus.* The writ of mandamus is discretionary; an action in mandamus is not governed by the principles of ordinary litigation where matters alleged on one side and not denied on the other are taken as true and judgment pronounced thereon as of course; nor can the lawful powers of an official board be enlarged beyond their statutory scope by a judgment involving questions of law which are not adversely contested.

2. DRAINAGE DISTRICT—*Limitation of Powers of District.* The basis for the powers of a drainage district board to institute and maintain litigation is to enable it to reduce or minimize the hazard of floods in the territory subject to its jurisdiction, and matters pertinent thereto; and such powers do not extend beyond those limits, nor can the drainage district board maintain an action to compel the board of county commissioners to build a bridge, when its construction will not in any degree lessen the flood hazard which the drainage board seeks to eliminate.

3. SAME—*Power of Drainage District to Order Removal or Reconstruction of Bridges.* A drainage district board has power to order the removal or reconstruction of a bridge or part of a bridge which tends to increase the

hazard of floods, and to conduct litigation to enforce its reasonable orders designed to that end; but when it makes such an order and the enforcement thereof is temporarily restrained by a court of competent jurisdiction, it has no power to order the construction of another bridge near the site of the one which it has determined to be a flood menace, especially so long as there is an apparent purpose, to permit the bridge which does cause the flood menace to remain in the river channel without being disturbed, or if such is the result of the action which it seeks to prosecute.

4. SAME—*Facts Forming Basis for This Action for a Writ of Mandamus.* The board of county commissioners of Wyandotte county built a bridge across the Kansas river pursuant to a special act of the legislature in 1887. The bridge was partly wrecked in the flood of 1903, and a special act of the legislature of that year directed the county board to rebuild the bridge; and provided that when so rebuilt the bridge should become the property of Kansas City and that municipality should have full control and responsibility therefor. A street-railway company thereafter acquired some interest in the bridge. In 1919 and 1920 the drainage district board, having power to protect the territory thereabout from the hazard of floods and to maintain actions to clear the river channel of obstructions, ordered the county board to remove the north span and approach of the bridge on the ground that it increased the flood hazard. The county board signified its willingness to eliminate the flood menace of the old bridge by building an entirely new bridge if assured that it had power to do so and to issue county bonds therefor without a vote of the people, provided the drainage district board would make an order to that effect. The drainage board complied, and directed that a new bridge be constructed. Meantime, the street-railway company which claimed an interest in the bridge brought suit in the federal court charging that the drainage district board's order was unreasonable and confiscatory, and a temporary restraining order was issued forbidding the county board to molest the bridge. While that suit was still pending and undetermined the drainage board brought mandamus in the district court of Wyandotte county to compel the county board to issue bonds without a vote of the people and use the proceeds thereof to build a new bridge near the site of the bridge complained of. The writ was issued with the proviso that nothing be done to molest or disturb the existing bridge whose obstruction with the free flow of flood waters alone gave the drainage board power to act. *Held,* that the drainage board has no power to compel the county board to build a new and aditional bridge, no power to maintain the action, that the matter of building a new bridge is one vested in the discretion of the county board if it has any power or duty in the premises (which point is not decided) and that the action should be dismissed.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 11, 1922. Reversed.

*J. H. Brady,* of Kansas City, for the appellant; *T. F. Railsback,* and *William H. McHale, jr.,* both of Kansas City, of counsel.

*Thomas A. Pollock,* of Kansas City, for the appellee.

*Maurice L. Alden,* and *Richard J. Higgins,* both of Kansas City, as *amici curiæ.*

The opinion of the court was delivered by

DAWSON, J.: This action in mandamus was originally brought in the district court of Wyandotte county by the Kaw Valley Drainage District to compel the board of county commissioners to remove the north span and approach of a bridge across the Kansas

river in Kansas City, and known as the Twelfth street bridge. The bridge was erected by Wyandotte county in 1887 under a special act of the legislature (Laws 1887, ch. 88) at a time when its site was probably outside the limits of any city. The act directed the county board to construct the bridge "at or near the town of Argentine." This bridge was partly destroyed in the historic flood of 1903, and at a special session of the legislature the board of county commissioners was authorized to restore it, and it was also declared in the same act that when rebuilt the bridge should become the property of Kansas City and subject to its jurisdiction. (Laws 1903 [Special Session], ch. 33.) This act, in part, reads:

"Section 1. That the board of county commissioners of Wyandotte county, Kansas, are hereby·authorized to order constructed and to contract for and construct, and to issue the bonds of said county for the cost thereof, without an election being held therein to authorize the same, the following bridges and approaches thereto across the Kansas river in the city of Kansas City, as follows: . . . Also, one bridge and approaches thereto across the Kansas river at Twelfth street in said city of Kansas City, connecting said Kansas City with the city of Argentine, in said county: *Provided,* That the cost of said bridge to said county, for the payment of which bonds are hereby authorized to be issued, shall not exceed the sum of seventy-five thousand dollars: *And provided further,* That said board of county commissioners shall not have the power or authority to build said bridge unless the Metropolitan Street-railway Company shall pay not less than one-half the cost thereof, or renounce all right, power and authority to cross said bridge or to use the same to any extent or for any purpose whatever: *And provided further,* That nothing herein shall be construed to affect any right or obligation which may now exist between the city of Kansas City and the Metropolitan Street-railway Company pertaining to said bridge or the use, repair or maintenance thereof. . . .

"Sec. 5. . . . As soon as any of said bridges is constructed the same shall become forthwith a city bridge, and be owned by and be under the control of said city of Kansas City, subject to all the uses, contracts, liabilities and supervision as other city bridges of said city."

The action of the drainage district board was based upon its finding that the footings of the north span and approach of this bridge and the low elevation thereof tended to obstruct the flow of flood waters and to increase the hazard of inundation of the community under the jurisdiction of the drainage district.

The board of county commissioners was reluctant to go to the expense of removing these alleged obstructions because the bridge is getting old, the south approach and other parts of the structure having been erected in 1887, and even the part which was renewed

after the flood of 1903 showed considerable deterioration. The
defendant board preferred, if it was required to act at all, that the
bridge be demolished and an entirely new structure be erected in
its stead. The drainage board readily acquiesced in this and made
an order for a new bridge, and renewed its demand for a writ of
mandamus requiring compliance with its orders.

Meantime, the Kansas City Railways Company filed a suit in
the federal court to enjoin the drainage district board from en-
forcing its order and also to enjoin the board of county commis-
sioners from obeying it. Pursuant to the verified bill a temporary
restraining order was issued out of that court, part of which
reads:

"Because said verified petition shows that the defendant, the Drainage Dis-
trict, on or about the 9th day of January, 1920, pretending to act pursuant
to the provisions of the laws of the State of Kansas, made an order con-
demning the whole of said Twelfth Street bridge, and ordering the same,
together with all parts thereof, removed from over the Kansas River, and
that said order is pretended to be made because of the claim that said struc-
ture is a menace from the standpoint of flood protection and navigation,
when in truth and in fact said structure is not a menace to flood protection
and navigation, and because said verified petition shows that said defendant
County Board has invited and requested the defendant Drainage District to
make said order,—the effect of which is to destroy plaintiff's right in said
structure and in the highway formed by said structure, and because said
verified petition shows that if said order be not enjoined, the defendant County
Board will take possession of the whole of said bridge and remove the same
and all parts thereof, including the foundations, from the river, thereby de-
stroying plaintiff's property in said structure and impairing, if not destroying,
plaintiff's right to the use of the highway at Twelfth Street and rendering
useless many hundreds of thousands of dollars of plaintiff's property in
Kansas City, Kansas, by reason of the destruction of said bridge, and be-
cause said verified petition shows that said County Board, pretending to act
pursuant to the laws of the State of Kansas will attempt to cause to be erected
in place of said Twelfth Street Bridge so to be destroyed, a new structure the
cost of which is estimated to be in excess of $600,000, and will attempt to
charge plaintiff with one-half of the cost of said structure, or a sum of ap-
proximately $300,000, and that said County Board is planning to act pur-
suant to the provisions of Chapter 64 of the Session Laws of 1909, and acts
amendatory and supplemental thereto, which act provides for the issuance
of bonds without a vote of the electors, and that unless restrained from so
doing, as herein stated, will unlawfully issue bonds of Wyandotte county to
the extent of approximately $600,000.00  . . .

"That the bridge in its entirety does not violate any reasonable rule or
regulation prescribed by the Drainage District for bridges, and that it is not
necessary to remove the whole of said bridge in order that said structure

should conform to reasonable or lawful requirements of the Drainage District.

. . .

"It is hereby ordered: That the said defendant, the Board of County Commissioners of the County of Wyandotte, State of Kansas, is, until the application herein for preliminary injunction has been heard and determined by the court, restrained and enjoined from in any manner enforcing the said order of January 9, 1920, condemning the whole of said Twelfth Street Bridge, and said defendant, the Board of County Commissioners of Wyandotte County, Kansas, its officers, agents, servants and attorneys be, and they are restrained and enjoined until the application herein for preliminary injunction has been heard and determined by the court from taking possession of, or interfering with said existing Twelfth Street Bridge across the Kansas River, or from in any manner obeying or complying with said order of the Drainage District of January 9, 1920, or from letting any contract for the removal of said bridge, or from issuing any bonds for the purpose of reconstructing said bridge."

So far as this record shows, this suit is still pending and undetermined; and, indeed, it is fairly to be inferred that it has been allowed to drift without any effort to bring it to trial. One feature of the restraining order was afterwards brought to the attention of the federal court, and a modification of the order was obtained:

"It is further ordered that the restraining order given herein, June 22, 1920, be modified and dissolved in so far as the same restrains the defendants, or either of them, from issuing bonds for, or taking other proceedings for, the reconstruction of said Twelfth Street bridge by building a new bridge in lieu thereof at a place and in a manner which does not prevent the use of the present Twelfth Street bridge for the operation of plaintiff's street railway."

The pendency of the federal suit and the restraining order issued out of that court and its later modification were brought to the attention of the trial court in this *mandamus* case by statements of counsel which were considered as agreed facts.

[Counsel for plaintiff]: "Permit me to ask you, Mr. Brady, wasn't this plan exhibited to Judge Pollock at the time he made this order and this matter that you are referring to called to his attention?"

[Counsel for defendant]: "Yes, sir; and Judge Pollock, in open court, says, 'I don't care how many bridges you build,' . . . 'Go ahead and do what you please about a new bridge, but don't touch this one.'"

After consideration of all the pleadings, statements and admissions, and on being advised that the county board was willing to build a new bridge near the site of the present bridge if it could be assured of its power to do so and assured of its power to issue bonds therefor without a vote of the people, to the extent of a million dollars perhaps, or if the board could shelter itself behind a

court judgment in mandamus to that effect, the trial court decreed that the writ of mandamus should issue for the *reconstruction* of the bridge in accordance with the orders of the drainage board—

"And to issue bonds for and take proceedings for the reconstruction of said Twelfth Street bridge and reconstruct said bridge by the building of a new bridge in lieu of the present bridge at a place and in a manner which will not prevent the use of the present Twelfth Street bridge for the operation of the Kansas City Railways Company's street railway.

"No issue as to the time of removal of the present Twelfth Street bridge is now adjudicated."

Out of mere prudence the defendant board of county commissioners brings this case here for review. Many matters are presented for our consideration in the briefs of counsel for the parties, and also in the brief of *amicus curiæ.* Only the most significant and controlling of these will need discussion. The plaintiff contends that the judgment below was virtually entered *pro confesso,* and that the defendant is not entitled to a review.

In the first place this action is one in mandamus, which differs in certain material respects from an ordinary lawsuit. The court does not have to take the case exactly as it is presented by the parties. The writ itself is discretionary. The powers of the board of county commissioners cannot be enlarged by mandamus. In an ordinary lawsuit, if a matter be alleged by plaintiff and it is admitted or not denied by the defendant, it is taken as true, and judgment is given accordingly. But such is not the case in mandamus. If the plaintiff should assert that the county board is authorized to start a bank or build a hotel, and the county board should admit or fail to deny the possession of such a power, a judgment for plaintiff on such contention would nevertheless be highly improper. And so here, the fact that the county board is willing to build a new bridge near the present bridge, and that the county board admits the allegation of the plaintiff drainage board that the county board has the power to build the bridge and to issue bonds therefor without out a vote of the people (a mere allegation of a legal conclusion) does not warrant the issuance of a writ of mandamus in a case of this sort. In *Kolster v. Gas Co.,* 106 Kan. 84, 86, 186 Pac. 738, it was said:

"An action in mandamus is a very different thing from an action on a debt or for damages or the like, where judgment as prayed for goes as a matter of course to the prevailing party, and where the court is absolutely bound to give such judgment. Mandamus is a discretionary writ, and before granting

it the court may and should look to the larger, public interest which may be concerned—an interest which the private litigants are apt to overlook when striving for their private ends."

The only basis for the power of the drainage district board to maintain this action is to secure compliance with its order to remove the old bridge or so much of it as obstructs the flow of water and tends to increase the flood hazard. But whether the old bridge or any part of it has that tendency, and whether the order to remove that obstruction by the demolition of the bridge in whole or in part is reasonable is a question which inheres in the suit in the federal court, nor can it otherwise be determined so long as the federal court retains jurisdiction. Certainly the building of another bridge near the site of the present bridge will have no beneficial effect upon the flow of water in the river. Aside from the power to institute and maintain litigation to remove or prevent obstruction to the free flow of water in the Kaw river and matters incidental thereto, the drainage district board has no general power to maintain actions to compel public officers and boards to perform their official duties, nor can the drainage board—nor indeed could the district court—substitute its discretion and judgment for that of the board of county commissioners on matters like the building of bridges which the legislature has entrusted to the latter. There is, moreover, very grave doubt in the mind of this court as to whether the board of county commissioners has any official power, duty or concern with this particular bridge, since section 5 of the special act of 1903 (chapter 33) provided that as soon as it should be rebuilt by the county board—

"The same shall become forthwith a city bridge, and be owned by and be under the control of said city of Kansas City, subject to all the uses, contracts, liabilities and supervision as other city bridges of said city."

This point will not now be decided, but nothing final concerning the Twelfth street bridge can prudently be undertaken without an authoritative ascertainment of the rights and liabilities of Kansas City therein.

The drainage district board has power to order the removal or reconstruction of a bridge or part of a bridge which tends to increase the hazard of floods, and to conduct litigation to enforce its reasonable orders designed to that end (*Drainage District v. Railway Co.*, 99 Kan. 188; 161 Pac. 937), but when it makes such an order and the enforcement thereof is temporarily restrained by a

court of competent jurisdiction, it has no power to order the construction of another bridge near the site of the one which it has determined to be a flood menace, especially so long as there is an apparent purpose to permit the bridge which does cause the flood menace to remain in the river channel without being disturbed, or if such is the result of the action which it seeks to prosecute.

If the order of the drainage board for the removal or reconstruction of the bridge or part of it to eliminate or minimize the flood hazard caused thereby was a reasonable order, the temporary restraining order of the federal court will eventually be dissolved. If the order was not reasonable, that matter will be judicially determined. Meantime the order of the federal court is, "Do what you please about a new bridge, *but don't touch this one*," and the writ of mandamus issued by the district court is, "Issue a million dollars' worth of bonds, more or less, and proceed at once to build *a new bridge at a place and in a manner which will not prevent the use of the present bridge*." This result cannot stand. Until the validity of the drainage board's order is adjudicated to a conclusion in the court having jurisdiction of that matter, the duty of the county board, if it has any duty touching this bridge, should neither be directed nor controlled by mandamus. Since the construction of another bridge will have no effect to reduce the flood hazard, the matter of building a new bridge must be left to the discretion of that official body (city or county) charged with the duty of determining the necessity for a new bridge, and in the present status of affairs the drainage board cannot maintain this action.

The judgment of the district court is reversed and the cause is remanded with instructions that it be dismissed.