**TRICKETT et al. v. KAW VALLEY DRAINAGE DIST. OF WYANDOTTE COUNTY, KAN., et al.***

Circuit Court of Appeals, Eighth Circuit.
March 29, 1928.

No. 7757.

**1. Courts ☞257—Generally, federal court cannot discharge duties nor assume discretion relating to construction and maintenance of state highways and bridges.**

Generally, the construction and maintenance of highways and bridges is exclusively within the state's police power, and ordinarily a federal court cannot take to itself the right to exercise the discretion and discharge the duties, to exercise the power vested by state statute in local officials or official bodies.

**2. Courts ☞307(1)—Federal court had jurisdiction, in suit involving required diversity of citizenship, to order reconstruction of bridge to be paid for by county (Laws Kan. 1909, c. 64, § 1).**

Under Laws Kan. 1909, c. 64, § 1, giving drainage district boards power to direct county commissioners to change or reconstruct bridges, and to pay for such improvements by issuing bonds of county without an authorizing election, and decision of Supreme Court that a drainage district board has power to order removal or reconstruction of bridge tending to increase flood hazards, and to conduct litigation to enforce its reasonable orders to that end, federal District Court had jurisdiction, in suit involving required diversity of citizenship, to order reconstruction of bridge over navigable river, and that work·should be done and paid for by county.

**3. Injunction ☞121—Stipulation and order to amend pleadings treated as amendment as respects court's jurisdiction to order reconstruction of bridge over navigable river at county's expense.**

In suit by foreign street railway company to enjoin county drainage district and county commissioners from reconstructing bridge over navigable river and retain old bridge, in which suit parties by stipulation agreed that, if committee of five to be appointed by federal District Court should so report, bridge should be reconstructed, and in that event company and its receivers should have right at their option to use reconstructed bridge on payment of reasonable sum, to be agreed on or fixed by court, *held*, that stipulation and court's order to amend pleadings to conform therewith will be treated as amendment to bill of complaint, as respects court's jurisdiction of subject-matter of reconstructing bridge, though original complaint did not present such issue.

**4. Courts ☞263—Federal court had jurisdiction to determine issue between defendants, citizens of same state, where necessary, before court could make decree determining whole case.**

Even if federal District Court had no primary jurisdiction of controversy between defendants in suit involving required diversity of citizenship, because said defendants were citizens of the same state, court nevertheless had jurisdiction to determine the issue, where it

*Rehearing denied June 7, 1928.

was necessary to settle it before court could make a decree in the whole case protecting asserted claims and rights of plaintiff.

**5. Contempt ☞21—Federal court's decree, requiring issuance of bridge bonds, held jurisdictional, and state suit to enjoin issuance of bonds was contempt (Laws Kan. 1909, c. 64, § 1).**

Where federal District Court had jurisdiction to order county commissioners to reconstruct bridge over navigable river, under Laws Kan. 1909, c. 64, § 1, to be paid for by county's issuance of bonds without an authorizing election, and to fix street railway's right to use bridge on certain conditions, its finding and decree in those respects were to be obeyed, however wrong they might be, and disobedience thereof by commencing suits in state courts to enjoin construction and issuance of bonds constituted contempt of court.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Kansas City Railways Company against the Board of County Commissioners of Wyandotte County, Kansas, and the Kaw Valley Drainage District of Wyandotte County, Kansas, in which defendant last named filed petition to punish C. W. Trickett, Justus N. Baird, and others for contempt of court, and for injunction. From a judgment finding respondents in said contempt proceedings guilty of contempt, the named respondents appeal. Affirmed.

C. W. Trickett, of Kansas City, Kan. (Fred Robertson and R. J. Higgins, both of Kansas City, Kan., and James A. Reed, of Kansas City, Mo., on the brief), for appellants.

Thomas A. Pollock, of Kansas City, Kan., for appellee Kaw Valley Drainage Dist.

L. S. Harvey, of Kansas City, Kan. (C. C. Glandon and John O'Brien, both of Kansas City, Kan., on the brief), for appellee Kansas City, Kan.

Before WALTER H. SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. This is a proceeding in contempt. It was brought October 3, 1924, by the Kaw Valley Drainage District and the City of Kansas City, Kansas, against appellants, who are attorneys at law residing at Kansas City, Kansas, and David Buckland, Samuel Clark and Peter Kramer who constituted the board of county commissioners of Wyandotte County, Kansas. The petition was filed in Equity Cause No. 339-N, pending in the court below, entitled "Kansas City Railways Company, a Missouri corporation, v. The Board of County Commis-

sioners of Wyandotte County, Kansas, and the Kaw Valley Drainage District of Wyandotte County, Kansas;" and it alleged that the United States District Court for the District of Kansas, in which said Cause No. 339-N was brought and was still pending, had on February 10, 1923, entered its decree therein providing for the reconstruction of the public bridge of Wyandotte County across the Kansas River at Twelfth Street in the City of Kansas City, Kansas, and requiring the board of county commissioners of Wyandotte County to let a contract for the reconstruction of said bridge and to issue negotiable bonds of said county to pay therefor; that the district court in said decree reserved to itself full jurisdiction, power and authority to make such other and further orders, judgments and decrees as might be necessary to the full completion and carrying out of the work of repairing, altering and reconstructing said Twelfth Street bridge; that thereafter the said five named persons in contemptuous disregard of the authority of the United States District Court and its decree, although knowing said court had prior and exclusive jurisdiction to litigate and determine all matters relating to the construction of said bridge and the issuing of bonds therefor, and had so decreed on February 10, 1923; nevertheless, with intent to hinder, delay and prevent the reconstruction of said bridge as provided in said decree, they the said Trickett and Baird instituted two suits, one in the State district court of Wyandotte County on September 27, 1924, entitled "Cause No. 21, 146-A, State of Kansas, ex rel. Justus N. Baird, County Attorney of Wyandotte County, Kansas, plaintiff, v. The Board of County Commissioners of Wyandotte County, Kansas, and Samuel Clark, David Buckland, and Peter Kramer as county commissioners of Wyandotte County, Kansas, N. A. Turner as auditor of the State of Kansas, George R. Griffith as county treasurer of Wyandotte County, and William Beggs as county clerk of Wyandotte County, defendants;" and the other in Kansas Supreme Court on September 30, 1924, Cause No: 26,045, entitled the same as the one in the State district court.

The petition prayed that the persons named be enjoined from prosecuting said suits and from attempting to litigate in any other court than the United States District Court any question as to the right, power, duty or authority of the board of county commissioners to reconstruct said Twelfth Street bridge or issue bonds of the county to pay therefor, and that they be ordered to show cause why they should not be committed for contempt for failure to comply with the decree of the United States court dated February 10, 1923, and for obstructing, hindering and delaying the construction of said bridge as decreed. The appellants and the three county commissioners answered and the court, without objections from any one, appointed a master to take the proof on the charges of contempt, directed him to report the testimony into court and his conclusions therefrom. The hearing before the master was at great length. He found that each of the five persons named was guilty of civil contempt. The three individuals composing the board of county commissioners filed no objections to the report. Trickett and Baird took many exceptions thereto. They were all overruled. The court approved the report of the master, adopted his conclusions and found that appellants (as also the three members of the board of county commissioners) were guilty of civil contempt, as charged. A fine of $1,000 was assessed against each commissioner, a fine of $2,000 against appellant Baird and a fine of $5,000 against appellant Trickett. The compensation of the master was fixed at $7,500. It was adjudged that his expenses in taking the proof and making report amounted to $1,926.30, that the drainage district and the city of Kansas City, the moving parties for the rule to show cause, should pay the costs, expenses and allowance to the master, but that they should be reimbursed by the contemnors in the proportions as between them represented by the fines imposed on them, and each should be credited on his fine for the amount thus paid.

We turn to a consideration of the causes which brought about the institution of suit No. 339-N in the court below by the Kansas City Railways Company, and other suits in the State courts concerning the bridge. Twelfth Street is intersected by the Kansas River. The bridge over it at that point was destroyed by flood in 1903, and thereafter reconstructed in that and the following year by Wyandotte County under a special legislative act. After it was constructed the street railway cars of the Kansas City Railways Company passed over the bridge, as well as public traffic of all kinds. The cars of its predecessor in title had also passed over it and the bridge that was destroyed in 1903. The Kansas River is a navigable stream from its mouth up to the bridge and for some distance above it. In June, 1910, the War Department established harbor lines along its banks. In the following month the Kaw

Valley Drainage District, organized under Session Laws of Kansas 1905, chapter 215, and thereby invested with broad and extensive powers to protect from floods in water courses within the district, also established harbor lines along the stream, through the City of Kansas City, which coincide with those established by the War Department. At Twelfth Street the distance between the harbor lines so established is 876 feet. The bridge as reconstructed in 1903–4 did not clear the harbor line on the north bank. In August, 1919, the board of directors of the Kaw Valley Drainage District, acting within its powers and after full hearing, found that the bridge as it then stood was an obstruction to the flow of the stream and a flood menace and by resolution ordered the northerly approach removed from within the harbor lines, including therein the steel structure, pedestals and piling supporting the same, also the north channel pier, and declared such removal necessary to prevent overflow; and it specified the character, elevation, grade and length of the new spans and approaches. It also ordered that the removal and reconstruction should be done by the board of county commissioners of the county. Whether that was a duty incumbent on the county under State law was one of the controversies in some of the litigation.

The board of county commissioners failed to comply with the resolution and order of the drainage board and thereafter the latter brought suit, referred to as Cause No. 12,283, in the district court of Wyandotte County, to compel compliance with its order. While that suit was pending the drainage board on January 9, 1920, found that the entire bridge constituted a flood menace and by resolution it ordered its removal by the county and the reconstruction of a new bridge at Twelfth Street by the county. On that day the Kansas City Railways Company instituted in the court below its said suit in equity No. 339–N, in which it sought an injunction against the removal and reconstruction of the bridge. In its original complaint, and in its amended complaint filed September 29, 1921, receivers of the railways company having been appointed in the meantime, it alleged that it was a Missouri corporation and a resident and citizen of that State, also, that its receivers were citizens and residents of Missouri, hence there was diverse citizenship between it and its receivers and the defendants; that long prior to January, 1916, the Metropolitan Street Railway Company was the owner of and had possessed various legal and equitable rights and interests in and to the Twelfth Street bridge, that at that time the railways company purchased and there was transferred to it all property and interests of the Metropolitan Company and it thereupon became the legal and equitable owner of all of the property of that company, including the rights and title of the former in and to said bridge and had ever since been such owner, that the bridge was constructed in 1903–4 under a contract between the Metropolitan Company and the board of county commissioners entered into in July, 1903, to be used in common by the public as a highway bridge and as a street railway bridge, and because of payments made by said Metropolitan Company under said contract the Metropolitan Company and the county became common owners of the structure, and by virtue of the sale to the railways company the latter in 1916 became the owner in common with the county and was entitled to the use of the bridge in perpetuity for street railway purposes, that also by virtue of certain ordinances of Kansas City it obtained a right to use the bridge, that it had continued to use the same until its receivers were appointed under its rights so acquired, and thereafter its receivers had been and were continuing that use, that in operating street cars over said bridge it was engaged in both intra- and inter-state transportation, and by contract with the United States was carrying the mails, that the order of the drainage district board of January 9, 1920, condemning the whole bridge and ordering its removal was pretended to be made because of a finding that the bridge was a menace from the standpoint of flood protection, while in truth and in fact that was not true, that the board of county commissioners had invited and requested the drainage board to make that order, the effect of which if carried out would be to destroy plaintiff's rights in the bridge and in the highway formed by it, that if the execution of the order of the drainage board were not enjoined the county board would take possession of the whole bridge, remove it and destroy plaintiff's property in it, rendering useless many hundreds of thousands of dollars of plaintiff's property in Kansas City, Kansas, that the new structure which the defendants threatened to make in place of the old bridge would cost in excess of $600,000 and an attempt would be made to charge plaintiff with one-half the cost thereof, that plaintiff was a large property owner in Wyandotte County and its property would be heavily taxed for the reconstruction of said bridge, that the then existing bridge could be made to conform to the reasonable

requirements of the drainage district made with a view to prevent flood obstruction in the stream by an expenditure of not exceeding $75,000, and that it was unnecessary to remove the whole bridge and that to remove all of it and construct a new one would be in violation of plaintiff's rights guaranteed by section 10 of article 1 of the Constitution and by the Fourteenth Amendment. It prayed that the drainage board and the county board be enjoined from enforcing and carrying out the order of January 9, 1920.

Both boards answered the original and amended petitions. They both denied that plaintiff and its predecessor had any legal or equitable rights and interests in and to the bridge. They admitted the orders and resolutions of the drainage board made in 1919 and on January 9, 1920, and alleged that it was necessary, as ordered on January 9, 1920, to remove the whole structure as a flood menace. The drainage board alleged that it made the orders in execution of its powers and that it was the duty of the board of county commissioners to comply therewith, that it had brought a suit (Cause No. 12,283) in the State district court against the board of county commissioners to compel compliance with its order made in 1919 to remove only a part of the bridge, that pending that litigation it passed its resolution of January 9, 1920, which was amended in August following, wherein it found that the whole of said bridge should be removed and a new structure erected, and it filed an amendment to its suit in the State court against the county board setting up its order of January 9, 1920 and the amendment thereto and on August 9, 1921, a peremptory writ of mandamus issued in that suit commanding the board of county commissioners to comply with its said orders and resolutions. It embodied in its answer a motion to dismiss the suit of the railways company on various grounds. The board of county commissioners in its answer alleged that the bridge was constructed in 1903–4 pursuant to Laws of Kansas of 1903, chapter 33, enacted at a special session, directing that the county construct the bridge. It denied that the plaintiff had any title to or interest in the bridge, admitted that it and its predecessor had used it, admitted that it and its predecessor had paid rental or royalty for the use of said bridge, alleged that neither paid any portion of the cost of the construction of said bridge, that as an additional consideration for the use of the bridge they were to keep the bridge in repair and its flooring in good condition, but each of said companies had long failed to comply with their obligations in any respect and because thereof the bridge had become dilapidated and dangerous. It alleged that when the county rebuilt the bridge in 1903–4 it was not then within the City of Kansas City and only became included therein in the year 1909, that since 1909 it had been wholly within the City of Kansas City, is a part of Twelfth Street in said city, the bridge since that time has been a city bridge under the jurisdiction of the city and the city should be made a party to the suit. It also embodied in its answer a motion to dismiss. The city came into the case as a defendant and filed its answer. It alleged that Twelfth Street was the principal north and south thoroughfare in the city, denied that it had any right to construct a bridge across a navigable stream and alleged that it was the duty of the county under the law to reconstruct the bridge, and prayed for an order of court that it be rebuilt by the county in accordance with the resolution of the drainage district.

Returning now to the suit brought in the State district court by the drainage board against the county board (Cause No. 12,283) to compel the county board to remove the old bridge and construct a new one—the Supreme Court on appeal reversed the action of the district court, which ordered the county commissioners to comply with the orders of the drainage board. See Kaw Valley Drainage District v. Board of Commissioners, 110 Kan. 566, 204 P. 723. Its opinion was rendered on February 11, 1922, two years after the Kansas City Railways Company instituted its suit in the Federal court. That opinion sets out the restraining order that had been issued by the Federal court against the drainage board and the county board in the suit of the railways company, restraining both defendants from taking any action to carry out the orders of the drainage board. It seems to have been made to appear to the Supreme Court that because of the restraining order the drainage board and the county board were then co-operating on a plan by which the former's order might be complied with by the construction of a bridge near the old bridge, allowing the latter to stand across the stream. The court said:

"The only basis for the power of the drainage district board to maintain this action is to secure compliance with its order to remove the old bridge or so much of it as obstructs the flow of water and tends to increase the flood hazard. But whether the old bridge or any part of it has that tendency, and whether the order to remove that obstruction by the demolition of the bridge in

whole or in part is reasonable, is a question which inheres in the suit in the Federal court, nor can it otherwise be determined so long as the Federal court retains jurisdiction. Certainly the building of another bridge near the site of the present bridge will have no beneficial effect upon the flow of water in the river. Aside from the power to institute and maintain litigation to remove or prevent obstruction to the free flow of water in the Kaw River and matters incidental thereto, the drainage district board has no general power to maintain actions to compel public officers and boards to perform their official duties, nor can the drainage board—nor indeed could the district court—substitute its discretion and judgment for that of the board of county commissioners on matters like the building of bridges which the Legislature has intrusted to the latter. There is, moreover, very grave doubt in the mind of this court as to whether the board of county commissioners has any official power, duty, or concern with this particular bridge, since section 5 of the special act of 1903 (chapter 33) provided that, as soon as it should be rebuilt by the county board, 'the same shall become forthwith a city bridge, and be owned by and be under the control of said city of Kansas City, subject to all the uses, contracts, liabilities, and supervision as other city bridges of said city.' This point will not now be decided, but nothing final concerning the Twelfth Street bridge can prudently be undertaken without an authoritative ascertainment of the rights and liabilities of Kansas City therein.

"The drainage district board has power to order the removal or reconstruction of a bridge or part of a bridge which tends to increase the hazard of floods, and to conduct litigation to enforce its reasonable orders designed to that end (Drainage District v. Railway Co., 99 Kan. 188, 161 P. 937), but when it makes such an order and the enforcement thereof is temporarily restrained by a court of competent jurisdiction, it has no power to order the construction of another bridge near the site of the one which it has determined to be a flood menace, especially so long as there is an apparent purpose to permit the bridge which does cause the flood menace to remain in the river channel without being disturbed, or if such is the result of the action which it seeks to prosecute."

The Supreme Court, in reversing the district court ordered that the cause be dismissed. That left the case in the Federal court as the only suit then pending involving a controversy about the bridge. We return now to that case.

On June 14, 1922, the Kansas City Railways Company, its receivers, the board of county commissioners, the Kaw Valley Drainage District, and Kansas City, Kansas, filed a stipulation in the cause in the Federal court, stating that within five days the parties in that suit would so amend their pleadings as to state the facts showing the necessity, and pray the Federal court to ascertain and decree in what manner, if any, the Twelfth Street bridge should be altered, changed, constructed, reconstructed, modified or repaired to fulfill the object and purpose of the stipulation and agreement. And to that end the court should appoint a commission of five men of standing and learning in their callings or business, three of whom should be civil engineers skilled in the business of bridge construction and flood protection, to fully investigate, hear, determine and report to the court what change, modification, alteration, destruction, reconstruction or repair should the Twelfth Street bridge suffer or undergo or be done to afford proper safeguard and protection against flood waters and for the proper and safe use of said bridge by the traveling public. That said commission should state what was necessary to be done, accompanying the same with plans, specifications, detailed drawings and blueprints for the letting of a contract for furnishing materials and doing the work of making repairs, alteration and reconstruction which they might recommend; also they should state the estimated cost for doing the work and what, if anything, was the interest of the Kansas City Railways Company in the present bridge structure, and what sum of money, if anything, should be awarded that company or its receivers on account of such destruction, change, reconstruction or repair of the bridge. It was agreed in the stipulation that all parties thereto would pledge themselves to make such orders, adopt such resolutions and take such steps as might be necessary to carry out the work of changing, modifying, tearing down, constructing or reconstructing anew the Twelfth Street bridge as recommended in the report of the commission and as said report by decree of court should stand approved and confirmed. It was further agreed that no portion of the cost and expenses should be charged against the receivers of the railways company, that the railways company should have no interest in the reconstructed bridge unless and until the completion thereof, at which time it might elect to pay such reasonable portion of the cost and have and acquire in the same such right, title, interest and use of the same

as the railways company or its receivers furnishing the money and bearing the expense might agree or might be determined by the court in the event the parties could not agree. It was agreed that each of the parties should advance and pay on order of the court one-fourth of all costs and expenses allowed to the commission for their services and expenses and that the court should reserve to itself full jurisdiction and authority to make such other and further orders and decrees in the suit as might be necessary to the full completion and final carrying out of the object, purpose and scope of the stipulation. On the day the stipulation was filed the court ordered that the pleadings of the respective parties be amended within five days in accordance with the stipulation.

Complying with the stipulation the court appointed a commission of five. It made its report on January 30, 1923, accompanied with complete plans and specifications for reconstruction of the old bridge, parts of which were to be utilized. It was to be increased in width from 20 to 40 feet. The receivers of the railways company filed exceptions to the report. They objected to the widening of the bridge and to other proposals for the new structure, on the ground that it could be repaired and reconstructed so as to prevent floods or interference with the flow of the stream and accommodate the traffic that would pass over it at much less expense if it were not widened and other proposed changes were omitted. The commission estimated that the cost of its proposed structure would be in the neighborhood of $385,000. It in fact cost about $100,000 in excess of that estimate. The commission also found that the railways company had an interest in the old structure as it then stood to the amount of $22,000 and recommended that sum be used as a credit to it in adjusting what it should pay for use of the reconstructed bridge. This also was objected to as inadequate. All of the other parties moved for confirmation of the commission's report. The county board in its motion asked the court to find and adjudicate (a) who was to pay the cost of reconstruction; (b) who was to remove and pay for the removal of the obstructions found by the commission to be in the river; and (c) what were the respective rights, interests and liabilities of the parties in and to said bridge when reconstructed and repaired.

On February 10, 1923, the court entered its decree, reciting therein the stipulation theretofore filed, the report of the commission which it had theretofore appointed, and found that it was necessary in order to secure adequate channel for the river at the bridge to make it safe against high waters and floods which frequently occurred, to change, alter and reconstruct the bridge in the respects specified in and according to the report and plans and specifications of the commission; and it was adjudged and ordered that the report of the commission be approved and confirmed, that the board of county commissioners of Wyandotte County should proceed at once and as speedily as practicable to reconstruct the bridge in all respects in conformity with the commission's report and the plans and specifications prepared by it, that a complete copy of the report be filed with the county clerk of Wyandotte County, that the board of commissioners submit within ten days to the Secretary of War and the Chief of Engineers of the United States Army and the board of directors of the Kaw Valley Drainage District applications for approval of said plans and specifications, that the board of commissioners, the board of the drainage district and the City of Kansas City make such orders and adopt such resolutions and take such steps and proceedings as might be necessary to carry out and perform the work of tearing down, altering and reconstructing the bridge and that the board of commissioners enter into a contract for that purpose, and after it was completed and it had been ascertained what sum or sums should be paid by the railways company or its receivers for the use of the reconstructed bridge they or it might then exercise the right of election to use or not to use it, that no portion of the cost should be charged against the railways company or its receivers as matter of right, but they should have no interest in the reconstructed bridge until the completion thereof, at which time they might elect to pay such reasonable portion of the cost and thus have and acquire a right to use the same, either by agreement as to the amount that should be paid or by determination by the court if the parties could not then agree, and in event of its election it should be credited with the sum of $22,000, that the railways company and its receivers be enjoined from delaying or interfering with or obstructing in any way the reconstruction of said bridge and that the work of reconstruction should be at the cost and expense of the county of Wyandotte and be supervised on behalf of the parties to the suit by such engineer as might be appointed by the court. It was further adjudged in the decree that the board of commissioners issue bonds of the county to provide for the reconstruction and that said bonds were authorized to

be issued and should be issued without the same being authorized by an election. It found that the Kaw Valley Drainage District was organized under chapter 215 of the Laws of Kansas for 1905, that the bridge was within the district and the district board had prescribed and fixed the height of the bridge, the location of the piers and abutments and had ordered the board of county commissioners to change and reconstruct the bridge in conformity to the harbor lines and channel, the location of piers and as to the elevation of the superstructure, that the drainage district had exclusive control over the beds, channels, banks and lands lying between the banks of the Kansas River at high-water mark, subject only to the jurisdiction of the United States over navigable waters, and had authority to condemn and cause obstructions in water courses to be removed and to fix and regulate superstructures over streams and power to maintain in any court of competent jurisdiction suits to enforce its reasonable orders in that respect. The decree stated specifically the obstructions to the channel by the old bridge. It reserved jurisdiction to make such other and further orders and decrees in the suit as might be necessary fully to carry out the contemplated work.

[1, 2] It is argued by appellants that the decree of the court ordering the reconstruction of the bridge and that the work should be done and paid for by the county was a subject matter over which it had no jurisdiction, that it was beyond the scope of the pleadings and therefore void; and under the settled rule there could be no contempt in disregarding it or obstructing its execution, that an order or decree made by a court without jurisdiction is a nullity and void. Ex parte Fiske, 113 U. S. 713, 718, 5 S. Ct. 724, 28 L. Ed. 1117; Ex parte Terry, 128 U. S. 289, 304, 9 S. Ct. 77, 32 L. Ed. 405; Brougham v. Oceanic Steam Navigation Co. (C. C. A.) 205 F. 857; In re Jewett, 69 Kan. 830, 77 P. 567; In re Letcher, 269 Mo. 140, 190 S. W. 19; Ex parte Hunt, 100 Ark. 419, 140 S. W. 710; 13 C. J. pp. 13, 14. Speaking generally, it may be conceded that the construction and maintenance of \highways and bridges is exclusively within the State's police power and that it is the uniform rule, as it is in Kansas, to invest by statute in named officials, or official bodies discretion to exercise the power and that ordinarily a Federal court cannot take to itself the right to exercise that discretion and discharge the duties thus vested in local authority. However, it plainly appears from the statutes of Kansas (chapter 64, Laws of 1909) that there are contingencies, under conditions like those in hand, in which judicial power is conferred to compel action by the board of county commissioners in carrying out appropriate orders of the drainage board. Section 1 of that act provides:

"Whenever in any county * * * the board of directors of any drainage district organized under the laws of this state * * shall prescribe, regulate or fix the height of any public bridge located within said district and the length of spans and the location of piers or abutments of any such bridge, * * * and shall notify and request, in writing, the board of county commissioners to change, alter or reconstruct any such bridge or bridges to conform to such * * * requirements, the board of county commissioners of the county wherein such public bridge is located is hereby authorized and empowered to reconstruct such bridges * * * and to reconstruct, remove and relocate the abutments and piers thereof, and to improve such bridges in any other respect required, * * * and for the purpose of paying for such improvements may issue bonds of such county without the same being authorized by any election."

And in Kaw Valley Drainage District v. Board of Commissioners, 110 Kan. 566, 572, 204 P. 723, 727, involving this very bridge, the Supreme Court said:

"The drainage district board has power to order the removal or reconstruction of a bridge or part of a bridge which tends to increase the hazard of floods, and to conduct litigation to enforce its reasonable orders designed to that end."

[3] It must be said, however, that the bill of complaint in Cause No. 339-N did not present as an issue or as the subject matter in controversy the reconstruction of the bridge. Its specific purpose was to enjoin such acts and to retain for use the old bridge, making necessary repairs. If its reconstruction was presented to the court for determination and that question brought within its jurisdiction we must look elsewhere in the proceedings to find it, and not to the plaintiff's complaint. We think it is found in the stipulation of the parties, and also as to who should reconstruct it in the answers of the county board and the city. By the stipulation all parties to the litigation agreed that if the committee of five to be appointed by the court should so report the bridge should be reconstructed and in that event the railways company and its receivers should have the right at their option to use the recon-

structed bridge on payment of a reasonable sum therefor to be agreed upon or to be fixed by the court. The parties thus invoked the court's jurisdiction to decree, if the commission so found, a reconstruction of the bridge and in that way protect and establish the asserted reserved rights of the railways company in its continued use of a bridge at Twelfth Street for its cars operated on that street. We see no reason why the stipulation in that respect, and the court's order to amend the pleadings in keeping therewith should not be treated as an amendment to the bill of complaint, thus bringing within the jurisdiction of the court the subject matter of reconstructing the bridge.

[4, 5] Turning to the answers of the county board and the city—each asserted that it was the duty of the other to construct the bridge and pay for it; and the county board in its motion to confirm the report of the commission of five asked the court to find and adjudicate what were the respective rights, interests and liabilities of the parties in the bridge. when it should be reconstructed and repaired and who was to pay the cost of reconstruction. This was a recognition of the issue in the answers and its submission to the court. And even though it be said that the question as to whose duty it was to reconstruct and pay for the bridge appeared only in the answers, and was therefore a controversy between defendants county board and city, as to which the court had no primary jurisdiction because those defendants were citizens of the same State; nevertheless, if it was necessary to settle that issue before the court could make a decree in the whole case protecting the asserted claims and rights of the plaintiff in the case, the court of necessity had jurisdiction to pass upon that issue. Lilienthal v. McCormick (C. C. A.) 117 F. 89; Patton v. Marshall (C. C. A.) 173 F. 350, 26 L. R. A. (N. S.) 127; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. (C. C. A.) 82 F. 124; Simkins Fed. Prac., Rev. Ed. 722, 723. The court thus had jurisdiction to find and adjudicate that the bridge should be reconstructed in order to fix plaintiff's contingent and future use. Of necessity, as well as under the answers of the city and the county board and the motion of the latter, it was required to adjudicate who must construct and pay for the bridge and through what means the payment was to be made; and having jurisdiction to decide those questions its finding and decree in those respects were to be obeyed, however wrong they might be. Brougham v. Oceanic Steam Navigation Co., supra; Foltz v. St. Louis,

etc. R. Co. (C. C. A.) 60 F. 316. We therefore conclude that the contention that the court was without jurisdiction to order the construction of the bridge and that appropriate orders should be made by the parties to the cause for that purpose, and that the court was without jurisdiction to determine who should construct the bridge and pay for it cannot be sustained. Appropriate orders were made by the drainage board and the county board for the reconstruction of the bridge, and the latter made appropriate orders for the issuance and sale of county bonds therefor, and those orders were finally executed pursuant to the decree of the court below and the bridge constructed in accordance therewith. We think the points of law discussed above are the only ones material to a disposition of the case here.

There was great delay on the part of the county commissioners. Bids were not taken and contracts let for the reconstruction of the bridge until more than a year after the decree was entered, and they were contingent on a sale of the bonds. The bonds were not ready for registration with the State auditor and delivery to the successful bidder therefor until long after bids for construction had been accepted and contracts made. The two suits which appellants brought, and for the bringing of which they were cited for contempt, were instituted, one in the State district court (Cause No. 21146–A) on September 27, 1924, and the other in the Supreme Court (Cause No. 26045) on the 30th day of that month. Both were entitled "State of Kansas ex rel. Justus N. Baird, County Attorney of Wyandotte County, Kansas, Plaintiff, v. The Board of County Commissioners of Wyandotte County, Kansas, and Samuel Clark, David Buckland and Peter Kramer, as Constituting That Board, N. A. Turner as Auditor of the State of Kansas, George R. Griffith as County Treasurer of Wyandotte County, and William Beggs as County Clerk of Wyandotte County, Defendants."

The one in the State district court asked that the State auditor be enjoined from registering the county bonds of Wyandotte County for the reconstruction of the bridge, that the board of county commissioners be enjoined from selling and delivering the bonds, that the county treasurer and county clerk of Wyandotte County be enjoined from taking any steps for their delivery and that said bonds be held null and void and of no validity whatsoever. It was alleged in the petition that the county commissioners were attempting to issue bonds of the county in the sum of $472,500 without a vote of the people,

and without any authority in law for the issuance of said bonds; that about $40,000 of said issue was to be used to provide flood protection and the balance to build a bridge for the convenience of the traveling public and that for the latter purpose bonds could not be issued under chapter 64 of the Laws of Kansas of 1909 without a vote of the people; that it was proposed to insert in said bonds a false recital that all of them were to be issued for flood protection; that the bridge to be constructed with the proceeds of said bonds was within the corporate limits of Kansas City; that a tentative contract for the sale of said bonds had been made a long time ago and a tentative contract for doing the work on the bridge had been made many months ago, and that the increase in the price of bonds if valid and the reduction in the cost of material were then such that a saving of $100,000 could be made by the wiping out of said illegal tentative contracts. In the suit in the Supreme Court it was alleged that the board of county commissioners were charged with the duty of maintaining public bridges in Wyandotte County outside the corporate limits of cities and that the City of Kansas City was charged with maintaining bridges within the corporate limits of said city; that the county board had no authority to expend public money for the repair of streets or highways within the city, that chapter 64 of the Laws of 1909 permitting issuance of bonds without a vote of the people was for the purpose of making such changes in county bridges as might be necessary to comply with the orders of the Secretary of War or the directors of the drainage district to prevent overflow and to conserve life, health and property, that said laws did not authorize the issuance of bonds without a vote of the people for any other purpose than protection against overflow; that the county board was without authority to build bridges within the corporate limits of Kansas City unless specially authorized by an Act of the Legislature; that only about $40,000 was needed to make the necessary changes in the Twelfth Street bridge to prevent overflow and to repair the remainder of the bridge for the convenience of the public would cost about $450,000, that the county board was proposing to issue bonds in the sum of about $500,000 under said chapter 64 of the Laws of 1909, that said county board had offered said bonds at public sale and received bids thereon and were proposing to deliver the bonds and evade the laws of the State by placing a false recital in the bonds purporting to show that they were issued un-

der chapter 64 of the Laws of 1909. Petitioners asked that the defendants be cited to appear and show by what authority they claimed the right to issue said bonds and use the proceeds for building a bridge for the convenience of the traveling public, by what authority they were attempting to build the bridge within the corporate limits of Kansas City and that the board be ousted from the authority to build or maintain bridges within the city and issue bonds for any purpose other than flood protection without a vote of the people therefor; and for a declaratory judgment in that respect. The successful bidder for the bonds was made a party on the order of the court and moved that the petition be dismissed on the ground that the issues tendered had been adjudicated by the United States District Court. A restraining order was issued and the case set down for argument. Appellants appeared as attorneys for plaintiff, filed brief and made argument. On October 15th the court dissolved the restraining order and dismissed the petition. The opinion of the court is found in State v. Board of County Commissioners, 117 Kan. 151, 230 P. 531. In that opinion we find this:

"The brief filed by the State was prepared by counsel who frankly stated they represented taxpayers who pay a considerable portion of the taxes of Wyandotte County. Presumably the county attorney used the name of the state in their behalf. * * * Regarding the action as one in the general public interest, the state has assumed inconsistent positions before this court regarding that interest. A little more than a year ago, the same county attorney who brings the action was here petitioning the court in the name of the state for a writ of mandamus to compel the county board to do what he would now oust them from doing."

Some of the findings of fact made by the Federal court contained in its decree of February 10, 1923, were set out in the opinion and it was said that if the Supreme Court should proceed to judgment on the merits and conclude that the bonds were wrongfully issued intolerable consequences would necessarily result. The Federal and State courts would be placed in antagonism and this, too, after the Supreme Court had twice theretofore indicated that the Federal court, already in full possession of the controversy, was capable of dealing with it. It was held that it would be highly improper for the Supreme Court to make any declaration of law upon the subject.

The master found from the evidence that

appellants had persistently pursued a course of conduct the only purpose of which was to make nugatory the decree of the Federal court, that they had full knowledge of all proceedings which had been taken by the drainage board, the county board and the Federal court, and that with this knowledge they co-operated and conspired with the county commissioners to defeat the reconstruction of the bridge and the issuance and delivery of bonds to pay therefor, thus to nullify the order and decree of the Federal court; that they advised the county commissioners they would be liable on their official bonds if they issued and delivered the county's bonds for the bridge; that their conduct, especially that of Mr. Trickett, was taken in a spirit of resistance and contempt for the decree and was a willful interference with the administration of justice in the Federal court, attended by unusual acts of contumacy. He found that appellants were engaged in a continuous course of conduct the object of which was to prevent the issuance of the bonds to pay for the bridge and thus defeat its reconstruction, and that the institution of the two suits by them was an attempt to carry out that purpose and that the county commissioners were consenting thereto. The district judge filed a memoranda expressing his views on the evidence and the exception of appellants to the master's report. Among other things he said:

"It was apparent to the court the repeated attacks made and their prompt rejection by the courts of the state, left no room whatever to doubt but little if any regard or respect for the decree of this court, made to accomplish what the court believed a laudable purpose, was held by those responsible for such attacks."

Several months before the citation issued in this case, a petition was filed against the three commissioners asking that they be cited for contempt because of alleged inexcusable delays in proceeding with the construction of the bridge as ordered in the decree, but that was dropped. In June, 1924, the county commissioners filed a suit in the State Supreme Court against the State auditor asking for a writ of mandamus to compel the auditor to register the $472,450 of Wyandotte County bonds for the reconstruction of the bridge. It does not appear that the auditor had refused to register the bonds. He testified that he had been cautioned about such action and he thought the suit was a friendly one. Appellant Trickett appeared in that case as a friend of the court and filed a brief attacking the validity of the bonds.

The successful bidder for the bonds came into the suit and represented that he was ready and willing to accept delivery of the bonds, and it was thereupon stipulated by all parties that it should be dismissed and the bonds registered by the auditor. Pursuant to the stipulation the Supreme Court entered its order of dismissal. To this appellant Trickett objected. The bonds were not then registered, and about four months later the two suits were instituted by appellants in the name of the State, attacking the validity of the whole procedure in the Federal court.

The testimony taken by the master is of great length. It has been considered. We think it sustains his conclusions and that the court did not err in its finding that the charge was sustained by the proof as to both appellants. The judgment appealed from is affirmed.